Burrows *vs.* Klunk.

</div>

(Decided 27th March, 1889.)

---

JOHN BURROWS, use of CHARLES M. BAINBRIDGE *vs.*
FRANCIS A. KLUNK.

*Alteration of Promissory notes by Raising the Amounts—*
*Negligence—Presumption of Agency.*

Two promissory notes, each for the sum of $50, both dated 7th of
February, 1887, and payable respectively 1st of June, and 1st of
July following, to the order of J. B. were drawn up and signed by

C. F. K. and at his request were indorsed by his father F. A. K. on the day succeeding their date.   After they were so indorsed, the son without the knowledge or consent of his father, changed the notes by inserting the words "five hundred and," before the word "fifty" in the body, and the figure "5" before the figures "50" in the left hand corner of each of them; space having been left between the "$" and the figures "50," sufficient for the insertion of the figure "5," and a blank before the word "fifty" sufficient to let in the words "five hundred and."   J. B. had no knowledge of these alterations when he received the notes.   In an action by J. B. against F. A. K. as joint maker or indorser of these notes, it was HELD:

1st.  That the fact that blank spaces, sufficient to admit of these alterations, were left in the notes at the time F. A. K. wrote his name upon them, did not constitute such negligence as would render him liable to an innocent holder for value.

2nd.  That the notes being complete at the time they were indorsed by F. A. K., their subsequent alteration, without his knowledge or consent, discharged him from liability upon them.

3rd.  That his assent to the alterations could not be implied from the fact that blank spaces were left in the notes sufficient to admit of such alterations being made without exciting suspicion.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First Exception.*—The plaintiff having concluded his case, the defendant was duly sworn, and the notes in question exhibited to him, and to maintain the issue on his part, after identifying his signatures as endorser on said notes, the following question was propounded to him:

What was the condition of those two notes when you endorsed them—put your name on the back, and delivered them to your son to be delivered to Mr. Burrows?

Burrows *vs.* Klunk.

Answer. They were in the same condition as they now are, except. that the words, "five hundred and," and the figure "5," have been added.

To the propounding of this question and to the answer thereto, the plaintiff objected, but the Court, (STEWART, J.,) overruled his objection and permitted said testimony to be given to the jury. The plaintiff excepted.

*Second Exception.*—The testimony being closed the plaintiff offered the two following prayers:

1. If the jury find that the defendant jointly with one Charles F. Klunk, made the promissory notes offered in evidence, then their verdict must be for the plaintiff for the amount of said notes.

2. If the jury believe that at the time the defendant wrote his name on the back of the promissory notes offered in evidence, the figures "50" in the left hand upper corner thereof, and the word "fifty," in the body of said notes, were in such a position as to enable a person to insert the figure "5," and the words "five hundred and" in the body of said notes, in the way described in the evidence, then their verdict must be for the plaintiff for the full amount of said notes, even although the jury may believe that the said notes have been so altered, unless the jury shall further find that the plaintiff knew that the said notes had been altered.

The defendant offered four prayers, of which the two following only are inserted, the others having been refused:

1. That if the jury believe from the evidence that the two notes sued on in this case, as originally written, were each for the sum of fifty dollars, and as such were endorsed by the defendant, Francis A. Klunk, and after being so endorsed were returned by him to the maker, Charles F. Klunk, and while in the hands

of the said maker, and before delivery, they were, without the knowledge or consent of the defendant, altered by the maker to notes of five hundred and fifty dollars each, then their verdict can only be for the plaintiff to the extent of the amounts originally inserted in said notes, and by the defendant admitted to be due and owing by the pleadings in the case.

4. That the burden of proof is upon the plaintiff to show that he acquired said notes *bona fide* for value in the usual course of business before maturity, and under circumstances that create no presumption that he knew of the existence of facts that impeached the validity of the instruments.

The Court granted the first prayer of the plaintiff, and the first and fourth prayers of the defendant, and refused the second prayer of the plaintiff, and the second and third prayers of the defendant. The plaintiff excepted, and the verdict and judgment being in his favor for a smaller amount than he claimed, appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, IRVING, BRYAN, and MCSHERRY, J.

*John Guyton Boston,* and *Charles Poe,* for the appellant.

The evidence in the first bill of exception is not admissible on grounds of public policy, and the introduction of testimony such as this has been expressly decided against in *Tome vs. Parkersburg Branch R. R. Co.,* 39 *Md.,* 36.

As the evidence in the first bill of exception was not admissible, the defendant's prayers founded thereupon should, of course, not have been granted. It is submitted that an examination of the authorities upon the point in question will show to the Court that this

is precisely the case in which the doctrine, "where one of two innocent parties must suffer, that one should suffer whose negligence has enabled the third party to commit the wrong," is applicable.  2 *Daniel on Nego. Instr.*, *2d Ed.*, sec. 1405; *Young vs. Grote*, 4 *Bingham*, 253; *Isnard vs. Torres*, 10 *La. An.*, 103; *Garrard vs. Haddan*, 67 *Pa. St.*, 82; *Harvey vs. Smith*, 55 *Ills.*, 224; *Phelan vs. Moss*, 67 *Pa. St.*, 59; *Zimmerman vs. Rote*, 75 *Pa. St.*, 188; *Guardians of Halifax Union vs. Wheelwright*, *L. R.*, 10 *Exch.*, 183; *Seibel vs. Vaughan*, 69 *Ill.*, 257; *Governor & Co. of the Bank of Ireland vs. Trustees, &c.*, 5 *H. L. C.*, 389; *Conklin vs. Wilson*, 5 *Ind.*, 209; *Van Duzer vs. Howe*, 21 *N. York*, 531; *Yocum vs. Smith*, 63 *Ill.*, 321; *Blakley vs. Johnson*, 13 *Bush*, 197; *Scotland County Nat'l Bk. vs. O'Connell*, 23 *Mo. Appeals*, 165.

The defendant wrote his name upon the backs of the instruments so carelessly prepared, that his son, to whom he entrusted them, was enabled to alter them without exciting, by such alteration, the suspicions of the plaintiff.  The original notes and protests show to the Court that after the delivery of the notes calling for \$550 each, to the defendant, they were discounted for him by the Traders National Bank.  And the possession of these original notes and protests shows to the Court, that the plaintiff has since paid \$550 for each of them to the bank, at their maturity.

The notes in this case being made payable to the order of the plaintiff, and endorsed by the defendant prior to their delivery by the maker to the plaintiff, the defendant, in the absence of proof to the contrary, was a joint maker and not the endorser thereof.  *Ives vs. Bosley*, 35 *Md.*, 262.

*Charles W. Heuisler*, for the appellee.

Under the general issue pleas it was entirely competent for the defendant to prove anything which showed

that he *did not owe the money sued for*, and to have admitted in evidence facts connected with the execution of the note which were supposed to indicate fraud in the procurement thereof, that the holder might be put to the test of showing he was a *bona fide* holder for value, and without notice of the impeaching facts. Especially is this true where the parties to the cause were the original parties to the transaction. *Poe on Pleading,* sec. 607; *Totten vs. Bucy,* 57 *Md.,* 452, 453; *Crampton vs. Perkins,* 65 *Md.,* 25; *Thorne vs. Fox,* 67 *Md.,* 73.

The second prayer of the plaintiff was properly refused. It proceeds upon the theory of estoppel as against the defendant, because the notes sued on were so awkwardly constructed as to permit of easy alteration, and that he was guilty of negligence in permitting them to pass from him, after his endorsement in this shape.

The notes when they passed from the defendant were complete as to date, time and amount, and however awkwardly drawn, he will be protected from their alteration by forgery in whatever mode it may be accomplished, and unless the alteration has been committed by some one in whom he has authorized others to place confidence as acting for him, he has quite as good a right to rest upon the presumption that it will not be criminally altered, as any person has to take the paper on the presumption that it has not been. *Holmes vs. Trumper,* 22 *Mich.,* 434, 435, 436; *Greenfield Savings Bank vs. Stowell,* 123 *Mass.,* 208; *Knoxville Natl. Bank vs. Clark,* 51 *Iowa,* 264.

The defendant's first prayer, which was granted, is open to no objection on this appeal. It has become in America an established rule, that if the instrument was complete without blanks at the time of its delivery, the fraudulent increase of the amount, by taking ad-

vantage of a space left without such intention, although it may be negligence, will constitute a material alteration and operate to discharge the maker. No title will pass, even to an innocent holder for value, when a bill or note has been materially altered after its issue, as against those persons who signed the instrument in its original state.

Those persons are not parties to the instrument which the holder received. He (the holder) is not a party to the instrument which they executed. 1 *Randolph, Commercial Paper*, 296; *Holmes vs. Trumper*, 22 *Mich.*, 435; *Greenfield Savings Bank vs. Stowell*, 123 *Mass.*, 196; *Knoxville Natl. Bank vs. Clark*, 51 *Iowa*, 264; *Bank of Ohio Valley vs. Lockwood, et al.*, 13 *W. Va.*, 416; *Angle vs. Northwestern Ins. Co.*, 92 *U. S.*, 330; *Wood vs. Steele*, 6 *Wallace*, 80; *Owen vs. Hall, ante p.* 97; *Trigg vs. Taylor*, 27 *Mo.*, 245; *Goodman vs. Eastman*, 4 *N. H.*, 455; *McGrath vs. Clark*, 56 *N. Y.*, 34; *Master, et al. vs. Miller*, 1 *Ames' Cases, Bills and Notes*, 434.

As to the action of the Court regarding the defendant's fourth prayer, there is no error. If a defendant shows by such proof as may be properly left to the jury to consider, that the instrument was procured by fraud, or was fraudulent in its inception, or that the consideration was illegal, or that it had been lost or stolen before it came into the possession of the holder, the burden of proof is changed, and it is then incumbent upon the plaintiff to show that he acquired the note *bona fide* for value, in the usual course of business, before maturity, and under circumstances that create no presumption that he knew of the existence of the facts that impeached the validity of the instrument. *Totten vs. Bucy*, 57 *Md.*, 452; *Crampton vs. Perkins*, 65 *Md.*, 22.

MILLER, J., delivered the opinion of the Court.

John Burrows sued Francis A. Klunk as joint maker or endorser of two promissory notes, each purporting

to be for $550, signed by Charles F. Klunk, dated Feb. 7th, 1887, and payable to the order of Burrows, one on the 1st of June, and the other on the 1st of July following. The defence is that these notes had been fraudulently raised from $50 to $550 each. At the trial two exceptions were taken by the plaintiff which need not be stated at length. On some points there is conflict of testimony, but as to the following material facts there appears to be no contradiction:

Charles F. Klunk is the son of the defendant Francis A. Klunk. The son had become indebted to the plaintiff Burrows in about the sum of $4000, and the plaintiff visited his house on the 5th of February and told him to get notes endorsed by his father to the amount of $1100, and that his (the son's) father-in-law would settle the balance. On the same day the son called upon his father with *five* promissory notes in favor of Burrows drawn up by the son and signed by him as maker for $50 each, and asked his father to endorse them which the latter positively refused to do. On the next day, Feb. 6th, the plaintiff and the son visited the father at his house, but the plaintiff testifies there was nothing then said about endorsing notes in the presence of the father, and that he went there simply for the purpose of being introduced as the gentleman who was furnishing the son with goods. On the following Tuesday, Feb. 8th, the son again called upon his father at his shop, again importuned him to endorse these *five* notes, and after a good deal of persuasion he agreed to endorse two of them, which matured respectively on the 1st of June and the 1st of July, 1887. Before doing so he took them to his office, read them over carefully, saw they were for $50 each, that they were dated the 7th of Feb. and were payable to the order of the plaintiff. He then wrote his name on the back of each, and delivered them to his son. The latter has

gone away, and when the notes were produced at the trial, it appears that the words "five hundred and" had been inserted before the word "fifty" in the body, and the figure "5" before the figures "50" in the left hand upper corner of each of them.

This statement is taken mainly from the testimony of the defendant, which in these particulars is uncontradicted. The notes themselves have been submitted to us for inspection. This inspection shows that if they were thus altered, the alterations must have been made by the son, after his father wrote his name upon them, and before they were delivered to the plaintiff, and that they must have been in such condition when signed by the defendant, as to admit of the alterations being so made as readily to deceive innocent third parties. There must have been a space between the "$" and the figures "50" sufficient for the insertion of the figure "5," and a blank before the word "fifty" sufficient to let in the words "five hundred and." As they now appear they are throughout in the handwriting of the son, who signed them as maker, written with the same ink, and with no discoverable trace of erasure.

It was left to the jury, by the granting of the plaintiff's and defendant's first prayers, to find whether the alterations had been made, and their verdict shows that they found this issue of fact in the affirmative. But the plaintiff has testified that he had no knowledge of these alterations when he received the notes, and the question is, can he recover upon them against the defendant, even if he had no such knowledge? It is manifest that if the defendant is made liable for the full amount of these altered notes, he will suffer a wrong, and sustain a loss, by means of a *crime* not less serious than the *forgery* of his signature. If his signature had been forged, or if the notes had been

raised by obliteration of the writing by any chemical process, or by any other device of an ingenious forger, it is conceded he would not be liable. But, because these small spaces were in the notes when he wrote his name upon them, it is contended that he was negligent in signing and leaving them in that condition; and the doctrine that where one of two innocent parties must suffer, that one should suffer whose negligence has enabled the third party to commit the wrong is invoked against him. There are cases in which this doctrine has been applied to negotiable instruments in order to protect innocent holders for value, but we think the weight of authority in this country is against its application to a case like the present. In support of this position we refer to the able judgment of the Supreme Court of Michigan, delivered by Judge CHRISTIANCY in *Holmes vs. Trumper,* 22 *Mich.,* 427, and the equally able and elaborate opinion of the Supreme Judicial Court of Massachusetts, delivered by Ch. Judge GRAY in *Greenfield Savings Bank vs. Stowell,* 123 *Mass.,* 196, also to the cases of *Goodman vs. Eastman,* 4 *N. H.,* 455; *McGrath vs. Clark,* 56 *N. Y.,* 34; *Knoxville National Bank vs. Clark,* 51 *Iowa,* 264, and *Worrall vs. Ghean,* 39 *Pa. St. Rep.,* 388. Such also seems to be the effect of the decisions of the Supreme Court in *Wood vs. Steele,* 6 *Wallace,* 80, and *Angle vs. North West Mutual Life Ins. Co.,* 92 *U. S.,* 330.

The case of *Tome vs. Parkersburg Branch R. R. Co.,* 39 *Md.,* 36, is quite different from this. The main question involved in that case was the extent of the liability of private corporations for the acts of their *agents,* done within the scope of their employment, expressed or implied. The party who committed the fraud was the treasurer and stock transfer *agent* of the company, entrusted with its seal, with books of stock certificates signed in blank by the president, and was

put in sole charge of the company's office in Baltimore. He was thus furnished by the company with every facility for making a fraudulent issue of stock. But here no such relation existed between the defendant and his son. The latter was neither the *agent* nor even the *employé* of the former. The notes were simply delivered to him after they had been signed, for the purpose of being carried to the plaintiff.

Nor is it a case where one signs a note in blank as to *amount,* and delivers it to another *for use,* with intention that the blank should be filled. In such case the instrument carries on its face an implied authority to fill the blank, and the signer makes the person to whom it is thus delivered his *agent* for that purpose, and is responsible to an innocent holder for value for whatever sum may be inserted. But here, each note was complete on its face when it left the hands of the defendant. A sum payable was actually written in it, and the date, time of payment, and the name of the payee were all inserted. In such case there can be no inference that the defendant authorized any one to increase this amount, simply because blank spaces were left in which there was room to insert a larger sum. It may have been carelessness in the defendant to sign the notes without drawing lines through these spaces, but he was evidently not a business man accustomed to sign notes; and it was not his carelessness, but the *crime* committed by another, that was the proximate cause that misled the plaintiff.

Appellant's counsel have placed great reliance upon the English case of *Young vs. Grote,* 4 *Bing.,* 253. In that case a husband having occasion to leave home for several days signed checks upon his banker in blank, left them with his wife with directions to have them filled up with such sums as the purposes of his business might require during his absence. The wife, in order

to pay wages to persons employed by her husband, directed a clerk who was also employed by him, to fill up one of these checks for a certain sum. The clerk did so, showed it to her, and she directed him to draw the money from the banker. When drawn up by the clerk the check was in substantially the same form, as to blank spaces, as these notes, and before he presented it the clerk had in the same manner raised it to a much larger sum. The banker paid the raised check in good faith, and was protected in so doing, against the claim of his customer, the husband. The difference as to facts, between that case and this, is that there the check was signed in blank by the husband who constituted his wife his agent to fill it up, and the raising or forgery was committed by a clerk in his employment. It was also a case between banker and customer, and in *Savings Bank vs. Stowell*, (*supra*), the position is taken that "the maker of a promissory note holds no such relation to the endorsees thereof as a customer does to his banker; the relation between banker and customer is created by their own contract, by which the banker is bound to honor his customer's drafts, and if the negligence of the customer affords opportunity to a clerk or other person in his employ to add to the terms of a draft, and thereby mislead the banker, the customer may well be held liable to the banker." There is force in this position, but the case of *Young vs. Grote,* though it has not, so far as we can ascertain, been directly overruled, has been seriously questioned, not so much as to its result, but as to the reasoning on which it is founded. Subsequent comments of the English Judges go far to limit the doctrine there laid down to the peculiar circumstances of that case. All the decisions containing the comments, made up to that time, are referred to in *Greenfield Savings Bank vs. Stowell.* To these we may add the more recent case of *Baxendale vs.*

*Bennett* in the Court of Appeal, (*Law Rep.*, 3 *Queen's Bench Div.*, 525,) in which BRETT, L. J., said: "I think the observations made by the Lords in the case of *Governor and Company of Bank of Ireland vs. Trustees of Evans' Charities in Ireland*, (5 *H. L. C.*, 389,) have shaken *Young vs. Grote*, and *Coles vs. Bank of England*, (10 *A. & E.*, 437,) *as authorities.*" The case is discredited, if not overruled as an authority, and we have found no English decision in which the maker of a promissory note has been held liable under circumstances similar to those which exist in the present case.

We approve and adopt the following reasoning in *Holmes vs. Trumper*, (*supra*): "The negligence, if such it can be called, is of the same kind as might be claimed if any man, in signing a contract, were to place his name far enough below the instrument to permit another line to be written above it in apparent harmony with the rest of the instrument; or, as if an instrument were written with ink, the material of which would admit of easy and complete obliteration or fading out by some chemical application which would not affect the face of the paper, or by failing to fill any blank at the end of any line which might happen to end far enough from the side of the page to admit the insertion of a word."  *  *  *

"Whenever a party in good faith signs a complete promissory note, however awkwardly drawn, he should, we think, be equally protected from its alteration by forgery in whatever mode it may be accomplished; and unless, perhaps, when it has been committed by some one in whom he has authorized others to place confidence as acting for him, he has quite as good a right to rest upon the presumption that it will not be criminally altered, as any person has to take the paper on the presumption that it has not been; and the parties taking

such paper must be considered as taking it upon their own risk, so far as the question of forgery is concerned, and as trusting to the character and credit of those from whom they receive it, and of the intermediate holders."

"If promissory notes were only given by first class business men who are skilful in drawing them up in the best possible manner to prevent forgery, it might be well to adopt the high standard of accuracy and perfection which the argument in behalf of the appellant would require. But for the great mass of the people who are not thus skilful, nor in the habit of frequently drawing or executing such paper, such a standard would be altogether too high, and would place the great majority of men of even fair education and competency for business, at the mercy of knaves, and tend to encourage forgery by the protection it would give to forged paper."

We are all of opinion that the defendant is not liable for the amount of these raised notes. In some of the cases, especially in Pennsylvania and Mississippi, recovery has been allowed for the amount of the note before it was thus altered. This, however, seems to ignore the principle, said to be of universal application, that any material alteration of a written instrument avoids it *in toto* as to any party to it who has not assented to such alteration. But that question does not arise on this appeal. The verdict and judgment were in favor of the plaintiff for the original amount of the notes with interest, and the defendant has not appealed.

In thus disposing of the case we have assumed, and must not be understood as having decided, that the plaintiff is a holder for value. It follows from what we have said that the Court below was right in admitting the testimony objected to in the first exception,

and that there is no error prejudicial to the appellant in the rulings upon the prayers. The judgment is, therefore, affirmed.

*Judgment affirmed.*

(Decided 27th March, 1889.)