## THE MERCHANTS NATIONAL BANK *vs.* BALTIMORE, CHESAPEAKE AND RICHMOND STEAMBOAT COMPANY.

*Bills of Lading—Condition Requiring Surrender of Bill Before Delivery of Goods—Assignment Bill by Holder After Receiving the Goods—Fraudulent Alteration of Bill of Lading—Transfer of Altered Bill—Estoppel—Usage.*

When a non-negotiable bill of lading issued by a carrier provides that the surrender of the bill, properly endorsed by the consignee, will be required before delivery of the goods, then if the carrier does make delivery of the goods without requiring the surrender of the bill, that is an act of negligence as against a subsequent assignee for value of the bill of lading; and the carrier is liable to such assignee for the loss occasioned by his taking the bill as being a representation by the carrier that the goods are still in his possession.

But when the holder of such a bill of lading obtains possession of the

goods without surrendering the bill, and afterwards fraudulently alters the date of the bill, and assigns the same for value, the alteration renders the bill null and void and the carrier is not liable thereon to the assignee. And the neglect of the carrier to demand a surrender of the bill of lading does not estop it to set up the defense against the assignee that the bill was made void by the alteration.

A condition in a bill of lading that any alteration, addition or erasure in the bill which shall be made without the special notation thereon of the agent of the carrier issuing the bill shall be void, cannot be construed to relate to a fraudulent alteration in the bill made after it was issued, and does not change the rule of law that a fraudulent material alteration of a written contract avoids it even in the hands of a *bona fide* assignee for value.

The rule that where one of two innocent persons must suffer by the wrongful act of a third, he must bear the loss who put it in the power of the third person to do the wrong, has no application to a case where the third person has fraudulently altered a commercial instrument issued to him by one of the parties. In such case the assignee of such altered instrument acquires no rights thereunder.

A steamship company issued bills of lading for cotton received from different shippers; the goods being consigned to the orders of the several shippers with directions to notify M. Each bill was declared on its face to be non-negotiable and contained these provisions : "If the word 'order' is written immediately before or after the name of the party to whose order the property is consigned without any condition other than the name of a party to be notified of the arrival of the property, the surrender of the bill of lading properly endorsed shall be required before the delivery of the property at destination." Also that if the cotton described in bills should not be called for within twenty-four hours after arrival it would be stored by the carrier at the expense of the owners. These bills of lading, endorsed in blank by the shippers, were transferred to M. and he obtained, delivery of the cotton they represented without surrendering the bills to the steamship company as required by the above mentioned condition. Afterwards M fraudulently altered the dates of the bills and pledged them with the plaintiff bank as collateral security for loans. In an action by the bank against the steamship company *held*, that the bills of lading were non-negotiable instruments and the bank as assignee thereof took them subject to the equities existing between the parties.

*Held*, further, that the alterations in the dates of the bills of lading were material and rendered them wholly void, and consequently the bank acquired no rights by the assignment of such void instruments.

*Held*, further, that the steamship company is not estopped to make this defense by reason of its failure to require the surrender of the bill, since the proximate cause of the loss to the bank is not the neglect of the carrier but the wrongful act of the holder of the bills.

Evidence of a usage to change or alter dates on bills of lading at the time of and prior to the issue thereof whenever necessary to makes the dates upon the bills presented to the carrier for issue conform to the true date of the issue, is not admissible to affect the rights of parties when the alteration of the bill of lading is fraudulently made by the holder after the issue thereof.

Appeal from the Superior Court of Baltimore City (BAER, J.)

The cause was argued before McSHERRY, C. J., PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*J. Southgate Lemmon* and *Hugh L. Bond, Jr.,* (with whom were *Arthur Geo. Brown, Daniel H. Hayne* and *C. Baker Clotworthy* on the brief), for the appellant.

*Bernard Carter* and *John Prentiss Poe* (with whom were *Foster & Foster* on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

This suit was brought by the appellant against the appellee on the 12th of April, 1902, for the wrongful conversion of certain bales of cotton ; and for damages arising from the negligent conduct of the appellee, in performing its contract, as set forth in the bills of lading, one of which is filed with the pleadings. The facts of the case about which there is little if any dispute briefly stated are, that prior to October 1st, 1899, the appellee issued thirty-four order bills of lading for bales of cotton, each drawn to the order of the shipper, notify Messersmith & Co. order subject to the special conditions on their back and face. That the cotton therein mentioned was promptly delivered to the said Messersmith & Co. at that time the owners of the property and the holders of the bills of lading, who received the goods without surrendering to the appellee the bills, as by the ninth condition on the bills should have been required. That after the delivery of the goods, Messersmith fraudulently altered the dates of the bills, and corruptly used them by transferring them to the appellant, as collateral for loans and advances made previously thereto. That the fraud of the said Messersmith was later on discov-

ered, and he was tried and convicted therefor. This suit was brought upon the bills of lading to recover the value of the cotton, or damages for the negligence of the appellee, in not requiring the surrender of the bills of lading, whereby the appellant was induced to accept the bills. From the judgment rendered, the appellant has taken this appeal.

The pleadings are carefully drawn and quite voluminous; and as it appears from the very able and exhaustive arguments of counsel made at the hearing or on brief, that most if not all the decisive points in the case are presented by them, a more extended reference to the pleadings will be made than is usual.

The first and second counts in the declaration are in trover, for the conversion of 2,436 bales of cotton. Subsequently the appellant added a third count. This third count as amended sets out in substance, that the appellee, being a common carrier received the cotton and issued bills of lading therefor, the printed form of which is made an exhibit; that the same was consigned as set out in the bills of lading, "to the order of the several shippers thereof, with directions to notify Jno. K. Messersmith & Co. of Baltimore; the word "order" being written on the several bills of lading immediately after the name of the consignee thereof, according to the course of trade followed in such cases, without any condition or limitation other than the name of the party to be notified of the arrival of the property at its destination." That the several bills of lading had prominently printed thereon, the following words: "If the word order is written immediately before or after the name of the party to whose order the property is consigned without any condition or limitation other than the name of a party to be notified of the arrival of the property, the surrender of the bills of lading properly endorsed, shall be required before the delivery of the property at destination." There was the further condition printed and set forth in the bills of lading, that if the cotton therein described should not be called for within twenty-four hours after the arrival thereof, it would be stored by the carrier at the ex-

pense of the owners. That by mesne endorsements for valuable considerations, paid, &c., by the appellant to the holders of the bills of lading, upon the delivery of the said bills and upon the faith of the conditions in the said bills, that said cotton would not be delivered to any one without the surrender of the bills of lading and that the cotton would be held and stored for account of the true owner until the said bills were surrendered properly endorsed for cancellation; but that after the appellant had paid and delivered its consideration upon the faith of the said bills, the appellant made demand upon the defendant to deliver to it, the said cotton, and presented the said bills properly endorsed for cancellation, the appellee could not and did not deliver the said cotton, because prior thereto the appellee had parted with the possession of the same, wherefore by reason of said negligence in failing to hold and store the said cotton, until the said bills of lading were surrendered, &c., the appellant was put to great loss, &c. To this count the appellee pleaded eight pleas, viz: by the first three pleas, limitations; by the fifth, that the said bills of lading after they had been issued, were fraudulently altered in a material particular, to wit, that the dates were changed, fraudulently and wrongfully, by Messersmith & Co. into whose hands they had come or by some person or persons at their instance and request, and so the said bills by reason thereof, the appellee "denies the genuineness" of these. The seventh plea is a general traverse to the averments of the third amended count in the declaration. The eighth plea sets out the alleged alterations, and further that by the terms of the bills, the same were "non-negotiable," and that the same while in the possession of Messersmith & Co., were duly presented by them, to whom the cotton was deliverable, and therefore the cotton was delivered to them, wherefore the appellee performed and satisfied all the obligations of the said bills and the same became and thereby were wholly "spent and exhausted;" and that afterwards, the said Messersmith & Co. fraudulently, &c., and without the knowledge of the appellee changed or caused to be changed and assigned the said,

"non-negotiable and spent and exhausted bills" to the appellant, &c.

The appellant demurred to the fifth, sixth and eighth pleas and pleaded specially to the other pleas.  So that the first questions that arise to be considered on this appeal, are,

1st.  Are the bills of lading in this case, non-negotiable?

2nd.  Are the alleged alterations material to ·the contract, and if so, do such alterations have the effect of rendering the contract, evidenced by the bills of lading void?

"By the common law a bill of lading was not in an unrestricted sense a negotiable instrument like a promissory note, but was as this Court has repeatedly stated quasi negotiable only.  But even that restricted common law negotiability may be limited and still further qualified by the insertion of appropriate terms wholly destroying all negotiability and it seems to be generally agreed that such a result may be accomplished by simply stamping or printing across the face of the instrument, the words "not negotiable," as was done in this instance."  *Bank of Bristol* v. *B.* ·*&* *O. R. Co.* 99 Md. 675; *Tiedeman* v. *Knox*, 53 Md. 615—616.  The former case further decides, that a bill of lading is of consequence *"only* in so ·far as it is the evidence of a title to something in somebody;" its transfer is the transfer of the title to the thing described in it and whatever equities exist between the parties to it with respect to the title of the parties which it purports to represent will follow that property into the hands of the assignee of the bill of lading, unless *some* other legal or equitable principle intervenes to preclude the assertion of a prior right as against a *bona fide* assignee for value.

In Maryland, bills of lading are now made negotiable instruments and securities "unless it be provided in express terms to the contrary on the face thereof, &c."  Art. 14, sec. 1, Code. It seems to be clear therefore that the bills of lading in this case, having the words "not negotiable" printed across the face of them are non-negotiable instruments or securities and as such passed to the appellant subject to such equities as existed between the parties to them, at the time of the as-

signment, unless there is some legal or equitable principle which intervenes to preclude the assertion of the prior right as against a *bona fide* assignee for value—or unless there are appropriate terms in the bills themselves that limit or destroy such features.    It is said however that these bills of lading cannot be wholly non-negotiable, because of those clauses which provide for the effect of the word "order" and also of those, which impose upon the carrier certain duties, after the arrival of the property at its destination ; or of those clauses referred to at argument, as the order clause, the assignee clause and the alteration clause.

The bills provide that every service shall be subject to all the conditions, written or printed thereon, all of which are agreed to by the shipper as owner or agent for the owner, and accepted for himself and his assigns as just and reasonable, &c.    By the ninth condition and in the body of the instrument, it was provided that if the word "order" is written immediately before or after the name of the party to whose order the property is consigned, the surrender of the bill of lading, shall be required before the delivery, &c.

The surrender clause which is the ninth when read in connection with other clauses seems to have been intended to give security to all persons dealing with the bills or the property.    It requires the surrender of the bills of lading whenever the word order is placed immediately before or after the name of the consignee upon the surrender of the property. To neglect this provision, would unquestionably constitute a breach of duty, but we do not think the clause properly understood affects the non-negotiability of the bill of lading. While not negotiable, the bills could be transferred and such transfer carried with it certain rights to the tranferce—as was held in the case of the *Bristol Bank, supra.*    It was probably inserted as well for the protection of the carrier as for that of persons dealing with the property.    The consignee is presumptively the owner of the goods and may be treated by the carrier as the absolute owner as well as by other persons who have had no notice to the contrary.    *Sweet* v. *Barney,* 23

N. Y. 333; *Lawrence* v. *Minturn*, 17 Howard, 100. If, therefore, the carrier is guilty of negligence in not enforcing this "order clause" and such neglect is the proximate cause of injury to one innocently dealing with the property such negligence would furnish a valid ground for a recovery in damages. *Coventry* v. *Great Eastern R. R. Co.*, 11 Q. B. D. 767 ; *London & N. W. Ry. Co.* 10 C. P. 307. But it is also alleged, that after the delivery of the goods, Messersmith & Co., the then holders and owners of the bills before they passed into the hands of the appellant were fraudulently altered by Messersmith changing the dates thereof.

It was said in *Wood* v. *Steel*, 6 Wallace, 80, "it is now settled in both English and American jurisprudence, that a material alteration in *any commercial* paper without the consent of the party sought to be charged, extinguishes his liability. The materiality of the alteration is to be decided by the Court. * * * The grounds of the discharge in such cases are obvious. The agreement is no longer the one into which the defendant entered. Its identity is changed; another is substituted without his consent; and by a party who had no authority to consent for him. If the instrument be under seal, he may well plead that it is not his deed; and if it be not under seal, that he did not so promise. In either case, the issue must be found for him. To prevent and punish such tampering, the law does not permit the plaintiff to fall back upon the contract as it was originally. In pursuance of a stern but wise policy, it annuls the instrument as to the party sought to be wronged." *Burrows* v. *Klunk*, 70 Md. 460; *Lehman* v. *Central R. R. Banking Co.*, 12 Fed. Rep. 596; *Getty* v. *Shearer*, 20 Pa. 12; *Bigelow* v. *Stilphens*, 35 Vermont, 521.

But it is contended, that this well-established doctrine, has no application in this case because, among other things, the eighth condition of the bill provides, that, "any alteration, addition or erasure in the bill of lading which shall be made without the special notation hereon of the agent of the carrier issuing the bill, shall be void." But we cannot agree to this.

The clause seems to be designed, to avoid unauthorized alterations; but it can have no reference to fraudulent alterations made after it has been issued by the carrier.    It is more reasonable to construe it as having reference as was said by the learned Judge below, only to such "alterations" as may be "properly susceptible of special notation by the carrier's agent." It would be most unreasonable to hold, that the intent of the condition was to do away with the well-settled law, that a material alteration fraudulently made by the holder vitiates the instrument, and so leave it unprotected from the devices of the unscrupulous.    *Burrows* v. *Klunk, supra; Wood* v. *Steele, supra.*

It was perfectly allowable for the parties to make any contract they chose to agree to; to limit or modify their respective rights, with respect to the place or mode of delivery, and in many other particulars, but in order that there should be no misunderstanding; this provision was made in this clause, that no alteration, addition and erasures in the bill should be valid, if made without the notation of the agent of the carrier issuing the bill.

The alterations shown by the proof were the changing of the dates of the bills of lading—whether such alterations are of a material character is a matter for the Court to decide.    It seems on principle as well as authority, that the change of the date of any commercial instrument, is a material change. Here the date not only identified the instrument, but is important because of the duties devolving on the parties after the property has reached its destination.    "The duty to deliver, within a *reasonable* time is one engrafted by the law upon the principal contract, which is to carry safely."    *Hutchinson on Carriers*, sec. 328.

It is important also in reference to the application of the Statute of Limitations, and also in the rule by which the loss or damage is to be computed in cases where the carrier is liable, depending as it does by the third condition of the bill of lading upon the "value of the property at the place and time of shipment, &c."

In the case of *Stephens* v. *Graham*, 7 Sergt. & Rawle, 507, where the alteration in a promissory note, was in the date from the 25th to the 26th, it was contended the change was not material, as the 26th came on Sunday and by the custom of merchants, the note became payable on the 25th the preceding day, the Court in holding that the date was a material part of the note, said "it does not depend on the accelerating or extending the day of payment, or increasing or decreasing the sum, but upon the identity; to insure the identity and prevent the substitution of one instrument for another is the foundation of the rule, and it is a wise rule, as it prevents all tampering with written instruments." To the same effect is *Getty* v. *Shearer*, 20 Pa. 12.

In *McCormick* v. *Lauber*, 7 Kas. Appeals, 730, where the alteration was of a note, the Court said. "It was well settled in this State that the change of a date is a material alteration and "vitiates the note without regard to whether the maker is prejudiced or benefited, or whether the time of payment is hastened or delayed. It is not the contract which he executed." 2 *Am. & Eng. Ency. of Law*, 2 ed. 236, 237; *Tiedman on Commercial Paper*, sec. 394; *Newman* v. *King*, 54 Ohio St. 277–278; *Master* v. *Miller*, 4 Term, 120.

In *Wood* v. *Steele*, 6 Wall. 82, the Court citing the above case, said: "It is now settled in both English and American Jurisprudence that a material alteration in any commercial paper, without the consent of the party sought to be charged extinguishes his liability." There was no error therefore in overruling the demurrers to the third and fourth pleas to the third count of the declaration.

By its replication to the fifth, sixth and eighth pleas, the appellant set up that the defendant was estopped from pleading prior delivery to Messersmith, because the alleged alteration was done at a time when the bills were wrongfully permitted by the appellee to remain in the possession of Messersmith. There seems to be abundant authority for the proposition that if the property had been delivered, while the bills which contain "the order clause" were still intact, without re-

quiring their surrender by Messersmith, whereby the latter was enabled to fraudulently obtain advancements from an innocent third party, the carrier would be responsible. This would be the case because by the terms of the bills of lading, the carrier was under obligations and therefore owed it as a duty to all persons not to deliver the goods to a third party, when the bills contained the "order clause," without requiring the surrender of the bills. In such case the violation of the duty, would be negligence, which would work an estoppel, and prevent them from denying the rights of the holder of the bills. *Coventry* v. *Great Eastern Ry. Co.*, 11 Q. B. D. 776; *Seton* v. *Lafone*, 19 Q. B. D. 69.

This point has already been referred to in this opinion and we refer to the authorities then cited. *Wichita Savings Bank* v. *Atchison, T. & S. F. R. R.*, 20 Kan. 520; *Forbes* v. *Boston & Lowell R. R.*, 133 Mass. 153; *Walters* v. *R. R. Co.*, 56 Fed. Rep. 369; *Midland Bk.* v. *Mo. R. R. Co.*, 132 Mo. 508 *et seq.*

The demurrers to the fifth, sixth and eighth pleas having been overruled, the appellants filed five replications thereto of which, the second and fourth, raise the question of estoppel, and the third and fifth allege that Messersmith in altering the bills of lading acted as the agent of the appellee.

1st. The theory, upon which the estoppel is claimed, is founded upon the duties which the appellees owed to all persons dealing with the bills of lading or the property represented by the bills, especially its duty under the order clause and the storage clause, not to deliver the goods, without requiring the surrender or endorsement of the bills of lading. But this theory as applicable to this case entirely ignores the fraudulent alteration of the bills which thereafter had the effect of changing the identity of the bills and substituting therefor another instrument. *Wood* v. *Steele*, 6 Wallace, 80, where it was said. "The law regards a security after its alteration as an entire forgery with respect to the parties who have not consented, and so far as they are concerned, deals with it accordingly."

The bills came into the hands of Messersmith complete instruments, and were such at the time of the delivery of the goods to them. The appellee should have acquired the surrender of the bills or at least the production of them, and a failure to make such requirement, was negligence, for which, if the result was to cause injury to another party dealing with the goods who had a right to suppose the property was still in the possession of the carrier and was himself, without negligence on his own part, the company would be liable. If loss and injury occur by reason of the neglect of the carrier to require the surrender of the bill of lading and by reason of the fact a person without notice for value become the transferee of the bills upon the presumption that the goods are still in the possession of the carrier, and suffers loss, thereby, the carrier would be liable to make such good in damages. *Carr* v. *London, &c., R. Co.*, 10 C. P. 307; *Coventry* v. *Great Eastern Ry. Co.*, 11 Q. B. D. 776. In the last case the Court founded the plaintiff's right to recover upon the "defendant's culpable negligence." The document presented to them and upon which they advanced their money, was issued by the defendants and therefore they owed a duty to merchants and persons likely to deal with the documents, and the neglect of that duty having been the *immediate* cause of the advances, the defendant was responsible therefor. *Wichita Bk.* v. *Atchinson, T. & S. F. R. R. Co.*, 20 Kansas, 520; *Midland, &c.,* v. *Mo. P. R. R.*, 132 Mo. 508, *et seq.*

In such a case as that, the well-established principle will apply that where one of two innocent persons must suffer by the act of a third, he must bear the loss, who by his conduct has made it possible, for the reason, that it was his act in failing to comply with his duty. But this principle has no application to a case where the instrument has been forged. In *Burrows* v. *Klunk*, 70 Md. 451, *et seq.*, where promissory notes had been fraudulently altered, and it was contended that the defendant was negligent in leaving them in such condition that they could be easily altered, this principle was invoked, but this Court held that the weight of authority in this coun-

try was against its application; and further said, "whenever a party in good faith signs a complete promissory note, however awkwardly drawn, he should, we think, be equally protected from its alteration by forgery in whatever mode it may be accomplished; and, unless, perhaps, when it has been committed by some one in whom he has authorized others to place confidence as acting for him, he has quite as good a right of rest upon the presumption that it will not be criminally altered, as any person has to take the paper on the presumption that it has not been." It was also so said in *Lehman et al.* v. *Central R. R.*, 12 Fed. Rep., 595, JUSTICE WOODS there fully maintained the position that no one is bound to anticipate or take precaution against the commission of a crime by which another may be defrauded. *Walsh* v. *Hunt*, 120 Cal. 52.

In the case of *Hardy* v. *Chesapeake Bank*, 51 Md. 590, this Court had occasion to examine this subject of estoppel, as applied to a case of checks forged by a confidential clerk. The defense by the bank, at least as to part of the claim, was that the plaintiff was estopped by his apparent acquiescence, as shown by the entries in his books made by the clerk who committed the forgery and its continuous dealings with respect to the balance, &c., without suggestion that anything was wrong, &c. After holding that "the possession by the bank of a forged check upon which money has been paid, affords no ground for a claim of credit in account as against the party whose name has been forged, but that such rule might be varied by the acts and conduct of the parties against whom such rules are intended to be enforced, the Court said, "the appellants were not bound at their peril and under all circumstances to detect the forgery. They were simply bound to refrain from doing any act that would reasonably have the effect of misleading the appellee to its hurt or injury, and not fail to do any act that positive duty required them to do for the protection of the appellee" * * * The Court further said, citing from the case of *Swan* v. *N. B. Australasian Co.*, 2 H. & Colt. 175, "if, in the transaction itself *which* is in dispute, one has led another into the belief of a certain state of

facts, by conduct of culpable negligence, calculated to have that result and such culpable negligence has been the proximate cause of leading and has led the other to act by mistake upon such belief to his prejudice, the second cannot be heard afterwards as against the first, to show that the state of facts referred to did not exist." Now what was the condition of affairs at the time of Messersmith's transaction with the bank? The former had in his possession thirty-four forged bills of lading, with respect to which the appellee had no connection whatever. The fact that Messersmith had obtained them as the evidence shows he had, cannot be material to the point involved, except that it might be evidence to show that his fraud included the carrier as well as the bank. This alteration rendered void the bills of lading and thereafter they were not binding on the appellee. How can it affect the obligations of the carrier any more or less because of the manner in which he obtained the bills than if he had stolen them and had forged them in every feature. The fact that he so practiced upon the credulity or stupidity of the agents of the carrier, that he was enabled to obtain the possession of the goods, can, in nowise, affect Messersmith's transaction with the bank, unless it can be shown that in that transaction the appellee has said or done something whereby the bank was misled into acting as it did, and this was not set up by the pleading.

So, in *Wood* v. *Steele*, it was said, the rule that when one of two innocent persons must suffer, he who has put it in the power of another to do the wrong, must bear the loss, "has no application in this class of cases." "The defendant could no more have prevented the alteration, then he could have prevented the complete fabrication; and he had as little reason to anticipate the one as the other." In *Burrows v. Klunk*, 70 Md. 451, *et seq.*, it is laid down, that whenever a party in good faith signs a *complete* promissory note, he should "be equally protected from its alteration by forgery in whatever mode it may be accomplished," &c., and the party taking such paper must be considered as taking it upon their own risk." In the case in 120 *Cal.* 52, the Court said "no

one is bound either to anticipate or take precaution against the commission of a crime by which another may be defrauded ; that while it is through the instrumentality of a criminal act that the wrong is accomplished, it is the crime and not the negligent act which is the proximate cause of the injury," and in such case the rule that while one of two innocent persons must suffer from the wrong act of another, the loss must fall upon the one making the act possible, has no application.  *Andrews* v. *Clark*, 72 Md. 396 ; *Hardy* v. *Ches. Bk.* 51, Md. 562.

"I am of opinion," said CHIEF JUSTICE COCKBURN, in *Swan* v. *N. B. Australasian Co.*, 2 Hurlston & Colston, 175, "that negligence alone, although it may have afforded an opportunity for the perpetration of the forgery by means of which another party has been damnified, is not of itself ground of estoppel."  *Baxendale* v. *Bennett*, 3 Queen B. Div. 530.

But it is also insisted that Messrsmith in making the alterations acted as the agent of the appellee.   That must depend upon whether Messrsmith was invested with authority to make the alterations, either expressly, or by implication or apparently.   It is not claimed such authority was given him expressly, or that there is anything of the kind inferrible from the fact, that he was named in the bills of lading as the person to be notified; or from any act or conversation, or from any course of dealing of the parties, from which such agency could be found.   The mere possession of the bills, gave him no such rights, unless the averment of a custom, as set out in the appellants replication can have that effect ; that is a custom to "change and alter dates upon bills of lading at the time of and prior to the issue thereof, whenever necessary to make the date upon the bills presented to the carrier for issue conform to the true date of issue."   Were there no other objections to setting up such a custom in this case, it could not be done, because whatever may be the custom of trade in altering the date to conform to the date of issue, such a custom could not support or tend to support a fraudulent alteration of "spent" bills for other purposes than to make it conform to

the date of issue of the bills.   Aside from, this, however we think a custom, such as is alleged in the replication, is not admissible in this case from the fact that it would alter the date of the true instrument, and would therefore be within the well-established rule, that a custom cannot be offered to vary the contract as agreed to by the parties thereto.   This Court said in *Foley* v. *Mason*, 6 Md. 49, "the theory of the law of usage rests upon the presumption, that in certain transactions the parties did not intend to expressly stipulate the whole contract by which they designed to be bound, but they intended to contract with reference to the known usages upon the subject, and that those usages were to be regarded as part of the contract.  And although evidence of usage is sometimes admissible to add to or to explain the terms of an agreement, *yet* it will never be permitted to vary or contradict the clear and manifest signification of the terms which the contracting parties may think proper to employ to express their meaning."

This usage if allowed would permit the appellant to show something outside of the contract itself, by which many features of the instrument would be absolutely changed, and substitute therefore an allegation to which the parties did not agree, and in fact, positively false.

The eighth clause, which provides how alterations in the contract can be made seems also to preclude such proof.   If such changes are made without the special notation of the "agent of the carrier issuing the bill," they are void.   Without pursuing the subject further, we are of opinion that the parties intended that the bill should be and remain as it was issued (unless altered in conformity with the eighth condition) and that in fact it expressed the contract that the parties agreed to.

The various demurrers, having been decided below in favor of the appellees, the remaining pleadings were brought to an issue, testimony was offered, and thereupon the Court granted a prayer taking the case from the jury.   All the points important to be decided in this appeal, being already covered by what has already been said, it is not necessary to further extend this opinion.

Finding no error in the ruling of the lower Court, the judgment will be affirmed.

*Judgment affirmed.*

(Decided January 11th, 1906.)