SAMUEL S. LINTHICUM and HARRY T. WAIDNER,
Co-Partners, Trading as Henderson, Linthicum
& Co.,

*vs.*

GEORGE P. BAGBY, Executor of Maria Barbara
Kriener, Deceased.

*Negotiable Instrument Act: dishonor; waiver of notice; incom-*
*plete promissory note; delivery; power to fill up.*

The provision in the Negotiable Instrument Act (Code, Art.
13, sec. 128) that "notice of dishonor may be waived, * * * "
and that the waiver may be express or implied,—is declaratory
of well settled principles of common law.        p. 646

The endorsement and delivery of an incomplete promissory
note, confers presumptive authority upon the person to whom
it is given to fill up the blanks.               p. 648

This implied power extends to every incomplete feature of
the instrument, and may be utilized for the insertion of the
date, amount, name of payee or time and place of payment.

p. 648

*Decided December 13th, 1917.*

Appeal from the Court of Common Pleas of Baltimore
City. (Soper, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*James U. Dennis* and *Frank Gosnell* (with whom were *William L. Rawls* and *Samuel K. Dennis* on the brief), for the appellants.

*Alfred Bagby, Jr.,* for the appellee.

URNER, J., delivered the opinion of the Court.

The essential question in this case is whether there is legally sufficient evidence to support the theory that notice of dishonor of the promissory notes in suit was impliedly waived by the indorser.

The notes sued on are four in number and the total of the balances of principal and interest they represent is $6,832.27. They were the last in their respective series of many renewal notes given in the course and settlement of the maker's transactions, as a poultry merchant, in the purchase of supplies from the plaintiff firm through a period of fifteen years. For the current indebtedness contracted in such purchases promissory notes would be given or renewed at the settlement periods for such amounts as the state of the accounts between the parties would require. All of the notes, original and renewal, were indorsed by the maker's mother, who died sometime after the last renewal notes were given, and whose personal representative is the defendant in this action. In no instance did the plaintiffs give notice to this indorser of the non-payment of a note, but the renewals were invariably delivered with the same indorsement at or shortly after the maturity of the notes they were to supersede. Sometimes a week would elapse after the maturity of a note before the renewal would be delivered. When presented to the payees

with the customary indorsement the notes would be in blank and the amount would be inserted by either the maker or the payees after it had been ascertained from the accounts. No communications passed between the payees and the indorser in regard to any of the notes. The indorser entrusted the notes to her son, the maker, occasionally six or seven of them at a time with her signature placed on them while they were blank, and he was thus enabled to make use of them as needed in his settlements with the payees. The inquiry is whether such conduct on the part of the indorser, continued without variation through the long course of her son's dealings with the plaintiffs, and involving the indorsement of approximately one hundred original and renewal notes affords a sufficient legal basis upon which to predicate an implied waiver of the notice of presentment and dishonor which would ordinarily be requisite for the enforcement of the indorser's liability.

The *Negotiable Instruments Act* (Code, Art. 13, sec. 128) provides: "Notice of dishonor may be waived either before the time of giving notice has arrived or after the omission to give due notice and the waiver may be express or implied." This provision is declaratory of a well settled principle of the common law. *Schwartz* v. *Wilmer,* 90 Md. 141; *Turnbull* v. *Maddux,* 68 Md. 587; *Seldner* v. *Mount Jackson Nat. Bank,* 66 Md. 488.

A waiver of notice of dishonor may be implied by any conduct or words of the indorser by which the holder of the note is reasonably induced to believe that such waiver was intended. In 8 C. J. 699, it is said that the waiver "may result from implication and usage or from any words or acts which by fair and reasonable construction are of such a character as will satisfy the mind that a waiver was intended, or which will justify the holder in assuming that the indorser intended to dispense with notice, or to induce the holder to forego the usual steps necessary to fix the liability of the indorsers." The principle is stated to the same effect in 3 R.

C. L. 466, p. 1240, and in *Worley* v. *Johnson,* 33 L. R. A.
(N. S.) 639.

In this case a long and definite course of dealing had estab-
lished a regular system of renewals under which the payees
of the notes dispensed with formal notice of dishonor and
notwithstanding such omission, the same continuing indorser
invariably joined in the successive renewals. If the indorser
herself had habitually brought the renewals to the plaintiffs
after the preceding notes had matured and notice of dishonor
had not been given, it would hardly be disputed that such a
practice, when continued uninterruptedly for fifteen years,
would have justified the belief on the part of the plaintiffs
that formal notice to the indorser of presentment and non-
payment was intended to be waived. Under such circum-
stances it would doubtless be conceded that the jury could
infer from the indorser's conduct an implied assurance to the
plaintiffs that notice of dishonor might continue to be safely
omitted. But the proof of waiver is supposed to be deficient
because it does not show affirmatively that the indorser actu-
ally knew of the conditions under which her numerous in-
dorsements were used. As she is not proven to have been
informed that the notes she so freely indorsed for her son
would be delivered by him to the plaintiffs in renewal, some-
time after maturity, of other notes bearing her indorsement,
it is argued that an essential element of the proof of waiver
has not been supplied. There would be greater force in this
argument if the notes had been complete when they left the
indorser's hands. But they were blank when they received
her indorsement and when they were presented to the plain-
tiffs. By indorsing them in that condition she confided them
to her son's discretionary use without limit as to time, method
or amount. It was a permissible inference from such a course
of conduct, habitually pursued, that the indorser intended to
place her credit continuously at her son's disposal, without
restriction as to his use of the notes, and with full assump-
tion of such liability as might be thereby incurred.

The indorsement and delivery of an incomplete promissory note confers presumptive authority upon the person to whom it is delivered to fill up the blanks. *Negotiable Instruments Act,* Code, Art. 13, sec. 33. This implied power extends to every incomplete feature of the instrument, and may be utilized for the insertion of the date, the amount, the name of the payee, and the time and place of payment. 8 C. J. 183; 3 R. C. L. 59, p. 874; *Burrows* v. *Klunk,* 70 Md. 461. The effect, therefore, of the indorsement of the series of blank notes referred to in this case was to invest the indorser's son, to whom they were delivered in that condition, with implied authority to make use of them according to the methods of settlement actually adopted. The plaintiffs could fairly presume that in presenting and using the blank indorsed renewal notes at such a time and in such a manner as to indicate a waiver of notice of dishonor as to the preceding notes in the series, their debtor was acting with the indorser's consent. In view of the apparent authority with which the indorser clothed her son by entrusting to his use the incomplete notes on which she had placed her signature, it seems just and right that she should be bound by the legitimate effect of the customary exercise of the authority thus conferred in obviating the necessity for notice of dishonor.

The evidence in the case is legally sufficient in our opinion to justify the submission to the jury of the issue of waiver, and we are, therefore, unable to concur in the ruling on the prayers by which a verdict was directed for the defendant.

> *Judgment reversed, with costs, and new trial awarded.*