**ARMOUR & CO. et al. v. GUARANTY STATE BANK. (No. 10185.)**

(Court of Civil Appeals of Texas. Fort Worth. March 31, 1923. Rehearing Denied May 5, 1923.)

**Bills and notes** &#x21DD;526—Evidence held to warrant finding that notice of dishonor was waived.

Evidence that a corporation's authorized agent, after indorsing and collecting checks and when the checks were presented for payment and dishonored by the bank on which drawn, expressly directed the bank at which he had discounted same to put them through again for collection, *held* to support a finding that notice of dishonor as required by Negotiable Instruments Act, § 89 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—89), had been waived as authorized by section 109 (article 6001—109).

Appeal from Young County Court; W. H. Reeves, Judge.

Action by the Guaranty State Bank against Armour & Co. and others. Judgment for plaintiff, and defendant named appeals. Affirmed.

Fred T. Arnold, of Graham, W. C. Kirk, of Chicago, Ill., and Capps, Cantey, Hanger & Short, of Fort Worth, for appellant.

Brown & Graham, of Graham, for appellee.

CONNER, C. J. The Guaranty State Bank of Graham, Tex., filed suit in the county court of Young county for the recovery of $952.20. The suit was instituted against ap-

pellant and the members of a partnership doing business under the firm name of the "Palace Market" upon three certain checks made by said firm, payable to the defendant Armour & Co., a corporation, and drawn on the Coleman Banking Company of South Bend, Tex. It was alleged that the checks specified, aggregating the sum of $952.20, had been delivered to and indorsed by Armour & Co., acting through its duly authorized agent, E. A. Helm, to whom, for Armour & Co., the plaintiff paid the face value of said checks, less the usual banking commissions.

No answer was filed by the members of the partnership, but Armour & Co. answered by a general demurrer, a special exception, a general denial, and specially to the effect that it had not been served with notice of the dishonor of the checks referred to, in the time and manner provided by the Negotiable Instruments Act (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—1 to 6001—197). To which plea the plaintiff replied, among other things, to the effect that Helm at the time was acting as the authorized agent of Armour & Co.; that immediately after the dishonor of the checks he had been notified thereof and the checks again, several times, returned for collection to the bank on which they had been drawn at the direction of said Helm, and in accordance with a custom previously adopted between them, and that after the final refusal of the parties to pay the checks Armour & Co. had been duly notified of the dishonor; and it was charged, in substance, that by reason of the facts stated the notice of dishonor required by the Negotiable Instruments Act had been waived.

There was a jury trial; the court submitting the case upon special issues, which, together with the answers thereto, are as follows:

"(1) When the two checks in question marked Exhibit A and B, dated 2 and 10, 1921, were returned from the South Bend Bank unpaid the first time, did E. A. Helm instruct the said bank to return the checks to the J. T. Coleman Banking Company for collection? Ans. Yes.

"(2) Did the said E. A. Helm instruct the said bank at Graham to return the three checks to the Coleman Banking Company at South Bend for collection? Ans. Yes.

"If you answer 'Yes' to the foregoing, then state how many times the said E. A. Helm instructed the said bank at Graham to return the checks to the bank at South Bend for collection. Ans. Three times.

"(3) Did E. A. Helm, at the time the checks were returned to the South Bend Bank each time, promise the plaintiff that the checks would be taken care of and payment guaranteed, or words to that effect? Ans. Yes.

"(4) Did E. A. Helm give general instructions to the bank at Graham to send back for collection any checks that he had cashed with it that had been dishonored? Ans. Yes.

"(5) If you answer special issue No. 4 in the affirmative, then were these instructions in force and effect at each time the checks were returned to the South Bend Bank? Ans. Yes.

"(6) Did the Guaranty State Bank, or any of its employees, notify either E. A. Helm or Armour & Co., within 24 hours after said checks had been first returned to them, that they had been dishonored by the J. T. Coleman Banking Company? Ans. No.

"(7) Did Armour & Co., by its agent, Helm, at the time said checks were first presented to the Guaranty State Bank or subsequently thereto, waive the giving of notice by the Guaranty State Bank? Ans. Yes."

Upon the answers of the jury to the special issues submitted, judgment was rendered in favor of the plaintiff for the sum of $952.20, as prayed for by plaintiff, and the defendant Armour & Co. has duly appealed.

The vital question presented for our determination is whether or not there was a waiver of notice of the dishonor of the checks indorsed by and paid to Armour & Co., as alleged in appellee's petition. It is undisputed that the checks were duly presented for payment and were dishonored, and section 89 of the Negotiable Instruments Act (see article 6001a—89 of the Complete Texas Statutes 1920, or Vernon's Ann. Civ. St. Supp. 1922, art. 6001—89) provides that—

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

Other sections of the Negotiable Instruments Act requires notice of dishonor to be given within 24 hours thereafter. See sections 103 and 104 (articles 6001—103, 6001—104). This was not done. But yet another section, to wit, 109 (article 6001—109), provides that—

"Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied."

Appellee invokes the benefit of this later section, and, as will be seen by reference to the findings of the jury, the verdict is in its favor on the issue of waiver. We have carefully considered the evidence, and in our judgment it sustains the verdict. There was evidence on the part of one of the bank officers to the effect that prior to the payment by it of the checks involved in the transaction, and prior to the indorsement of the appellant's agent, Helm, the latter had instructed the bank to return checks that had been dishonored to the bank upon which they had been drawn, and that upon the occasion in question Helm, upon being informed of the dishonor of the checks, each time expressly directed the checks to be returned and promised that he would see that they were paid. The agency of Helm is not de-

nied. It seems undisputed that as agent of appellant he was authorized to receive and collect checks given by appellant's customers for its products, of which Helm was a salesman, and the transaction, in substance, seems to have been one in which this salesman, for products of his principal, received checks and as a method of collection indorsed them to the appellee bank to be forwarded to the payee bank for payment. We see no reason for concluding that Helm, the agent, was not still acting within at least his implied or apparent authority in the effort to collect the checks after their dishonor. As it seems to us, he was still interested in seeing this done, notwithstanding the fact that the appellee bank had paid him cash therefor. Thereby he might relieve himself and his principal of at least a moral obligation to return the money received in event final collection could not be made.

It was held, in effect, in the cases of Linthicum v. Bagby, 131 Md. 644, 102 Atl. 997, and Simonoff v. National Bank, 279 Ill. 248, 116 N. E. 636, that a waiver of notice of dishonor may be implied by any conduct or words of the indorser whereby the holder is reasonably induced to believe that such waiver is intended, and that this is a question for the jury. Richardson v. Kulp, 81 N. J. Law, 123, 78 Atl. 1062, is a case where an indorser, knowing he was discharged from liability for want of proper notice of the dishonor, promised that if the maker did not pay the note he would. It was held that he waived his discharge.

In addition to what we have said, we gravely doubt whether appellant is in position to claim the benefit of the notice of dishonor required by the Negotiable Instruments Act. By reference to section 115 of that act (article 6001—115), it will be seen that notice of dishonor is not required to be given to an indorser in certain cases, among others, "where the instrument was made or accepted for his accommodation." While it is true that by the indorsement of Helm to the appellee bank, the authority to do which is not seriously denied, the legal title and right to collect the checks was vested in the appellee bank and that payment therefor was made, and hence, in form, a sale, yet the transaction, in substance, as before indicated, was apparently at least for the mere accommodation of Armour & Co. In its essence, the appellee bank simply took the checks for collection. It was not a purchase in the sense of commercial law, but a means adopted at the instance of appellant's undisputed agent to forthwith receive payment and await later actual collection from the makers. It is undisputed that the face value of the checks indorsed was paid by the appellee bank to appellant's agent, less a nominal commission usually charged in such

cases, and that appellant **in fact received** and yet retains the moneys so paid. And we feel very much inclined to the view that section 115 applies.

But, however this may be, and regardless of other questions presented not relating to the issue, we think the jury's verdict on the issue of waiver must be upheld as having been made by one apparently authorized to make it, and that hence the judgment must be affirmed.