FOUTCH *v.* ALEXANDRIA BANK & TRUST CO.

(*Nashville*, December Term, 1940.)

Opinion filed April 5, 1941.

McALLEN FOUTCH, of Smithville, and HENRY C. FOUTCH, of Nashville, for plaintiff.

R. L. TURNER, of Smithville, and BASS, BERRY & SIMS, and W. W. BERRY, all of Nashville, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

On December 31, 1938, W. L. Foutch purchased a cow from B. W. Foutch for $18, for which he gave a check to B. W. Foutch, payable to his order. In accordance with a practice which W. L. Foutch testifies he followed of having checks which he gave filled out by the parties to whom his checks were made, this check was written wholly by the payee. It was drawn on defendant, where W. L. Foutch did his banking. He testifies that the figures "18.00" were so placed in the blank provided on the check for that purpose that ample space was left between the figures and the dollar mark for the insertion of an additional figure. On the line lower down on the check provided for that purpose, and beginning at a point about midway of the line, were written the words, "Eighteen and no/100," just before the printed word, "Dollars."

On the left-hand corner, lower down, the words were written, "For cow." When this check was presented to the Bank for payment by B. W. Foutch, the payee, the figure 4 appeared between the dollar mark and the figures 18. And on the line below, in front of the word "Eighteen," appeared the words, "Four Hundred," the check thus calling for $418; and following the words, "For cow," in the left-hand corner, appeared the words, "& note." All of the figures and writing on the check, as it was presented to the Bank, except the signature, were in the same handwriting, that of the payee.

The Bank paid to B. W. Foutch the sum of $418 called for by the check, and charged it to the account of the drawer. This amount over-drew the account of W. L. Foutch, the testimony showing that a special arrangement had been made between Foutch and the Bank for protecting his over-drafts. The Bank at once notified W. L. Foutch that his account was over-drawn, and he advised the Bank that this check had been raised without his knowledge or consent to the extent and in the manner above indicated. B. W. Foutch was thereupon arrested and prosecuted and, meanwhile, a note was executed to the Bank for a sum which made good the account, pending disposition of the question as to whether the loss would be borne by the Bank or the depositor, in the event it was not recovered from B. W. Foutch.

Some months later this action was brought in the Circuit Court by W. L. Foutch, seeking to recover from the Bank this sum of $400.

The Bank defended, relying upon estoppel, insisting, first, that W. L. Foutch had ratified the payment of the check by the Bank by making good the over-draft, and failing promptly to disaffirm; and, second, that the Bank

had been induced to pay the amount called for by the face of the check by the affirmative inducing negligence of the maker in its preparation and issuance, the Bank being without negligence.

The trial Judge, sitting without a jury; adjudged that the plaintiff was guilty of negligence which proximately caused the loss, and that the defendant was not guilty of any negligence that contributed to the loss and was, therefore, not liable to plaintiff.

The case was accordingly dismissed and plaintiff appealed. The Court of Appeals reversed and gave judgment against the Bank. This Court granted *certiorari* and has heard argument.

The Court of Appeals found a conflict in the authorities, but expressed the opinion that ''the weight of authority is that the Bank must bear the loss where it cashes a check which has been altered.'' The correctness of this as a statement of the general rule may be conceded, but we find that the great ''weight of authority'' recognizes an exception where the drawer of the check has been guilty of such negligence in its issuance as to facilitate and induce its alteration so as proximately to cause its payment in its altered form.

The Court of Appeals apparently approves and applies the criminal instrumentality rule that, ''where the wrong was accomplished by a criminal act, the crime, and not the negligent act of the party which made it possible, is the proximate cause,'' citing 21 C. J. 1170, sec. 175, and our case of *State* v. *Broadway Nat. Bank*, 153 Tenn. 113, 128, 282 S. W. 194, 198. This opinion, by Chief Justice GREEN, is quoted from at length and treated as applicable here. We do not think so. That case involved forged indorsements on State warrants and the defense

was negligence in handling the warrants, which was the remote not proximate cause of the loss. The case is not only thus utterly dissimilar on its facts—and the language used therein must be treated as having been used with reference to the facts of the case—but the portions of the opinion quoted quite clearly suggest distinctions which are important, particularly the emphasis put upon the fact that the negligence of the State official who issued the warrants was "remote," and was not "a part of the issuance and delivery of the warrants." The principle announced was that, "Where an estoppel is sought to be based on negligence [as is true of the instant case], such negligence must be the proximate cause of leading the complainant party into the mistake," citing authorities, and adding, "also the negligence must be in the transaction itself."

These statements emphatically distinguish that case from this. Here we have a clear case of direct, immediate, as distinguished from remote, proximate cause, and negligence "in the transaction itself."

It is true that in that case, proceeding beyond what was seemingly necessary, the Court did mention the rule of law applied by the Court of Appeals here, that where the wrong was accomplished by a criminal act, the crime and not the negligence is the proximate cause of the loss or injury. Suffice it to say that there is nothing in the opinion of Chief Justice GREEN in the Broadway National Bank case that warrants the application of this criminal act intervention rule to the facts of a case such as this.

The reasons adduced from the authorities supporting the rule that the loss resulting from the payment of a raised check must fall on the drawer, when the altera-

tion in amount has been facilitated by the drawer's negligence, may be thus summarized:

1. That the true proximate cause of the loss is the negligence of the drawer in issuing the check in such form that it may readily be so altered that the alteration cannot be detected by the use of ordinary care.

2. That where one of two innocent persons must suffer, the loss should fall on the one whose negligence has facilitated the loss.

3. That the negligence of the drawer implies an invitation or authority to fill out blanks which estops the drawer as to a drawee who has, while exercising due care, honored the instrument in its thus altered amount.

4. That the relationship of a depositor with his banker imports an obligation to exercise reasonable care in the preparation and issuance of his mandate order on the banker to pay, a breach of which obligation renders the depositor liable for a loss.

Just here we call attention to a distinction of essential importance recognized generally, but apparently overlooked by the Court of Appeals, between bank checks and negotiable instruments of the note and bill class. This distinction is strongly emphasized in many of the leading cases, one reason therefor being that one who purchases a note, or like negotiable instrument, is under no manner of compulsion and acts purely at his option or election, under which circumstances it is not inappropriate to apply, by analogy, the *caveat emptor* rule; whereas, the Bank is under a direct and peculiarly delicate obligation, which requires prompt discharge, usually with little opportunity for investigation, to pay the check of its depositor, upon presentation, or subject itself to the risk of damages. Furthermore, the depositor, on the other

hand, owes to his bank the duty to exercise care in drawing his checks in order to avoid probable loss. *Greenfield Savings Bank* v. *Stowell*, 123 Mass. 196, 25 Am. Rep. 67; *Holmes* v. *Trumper*, 22 Mich. 427, 7 Am. Rep. 661; *Burrows* v. *Klunk*, 70 Md. 451, 17 A. 378, 3 L. R. A. 576, 14 Am. St. Rep. 371; 1 Paton's Digest, 54, Sec. 345.

The Annotator, in 22 A. L. R. at page 1149, quotes Viscount Haldane as saying, in *London Joint Stock Bank* v. *Macmillan* (1918; H. L.), A. C. (Eng.), 777; 9 B. R. C. 720, that:

"What I wish to make plain is that in the case of a check drawn by a customer on his banker there is a special duty to exercise care in the framing of what is a mandate—a special duty which does not exist in the same fashion in the instance of the accepter of a bill of exchange, where the instrument is drawn for circulation among the members of the public generally, and is not a direction to a designated person to pay out of a balance for which he has to account—a person who has a right to insist that the direction he receives, to be acted on without any delay, shall be so drawn as not to require exceptional consideration and to impose delay."

We quote further from this Annotator:

"Lord Shaw of Dunfermline, speaking of the duty owed from a customer to a banker, says: 'That duty is so to fill up his check as that, when it leaves his hands a signed document, it shall be properly and fully filled up so that tampering with its contents or filling in a sum different from what the customer meant it to cover shall be prevented.' 'The question whether there was negligence as between banker and customer is a question of fact in each particular case, and can be decided only on a view of the check as issued by the drawer, with the help of any evidence available as to the course of dealings between

the parties or otherwise. If the existence in a check of blank spaces of an unusual nature, and such as to facilitate interpolation, is declared to be no evidence of a breach of duty as between customer and banker, the duty would have little left to operate upon. To recognize the duty of care by the customer in drawing checks, and then to lay down as a matter of law that there is no breach of that duty by leaving such blank spaces in the check, is in effect to eviscerate the duty.' "

We find this rule holding the drawer of a check liable for negligence well supported by leading text book authorities. We cite and quote from a few of these, some of which extend the rule to other classes of instruments than checks.

This excellent statement is from Daniel on Negotiable Instruments, Volume 2, Section 1405. What this learned author says of bills and notes is, of course, even more true of bank checks:

"There is a general principle which pervades the universal law merchant respecting alterations (which, when they are material, will, as we have seen, vitiate the bill or note, even in the hands of a bona fide holder without notice); a principle necessary to the protection of the innocent and prudent from the negligence and fraud of others. That is that when the drawer of the bill or the maker of the note has himself, by careless execution of the instrument, left room for any alteration to be made, either by insertion or erasure, without defacing it, or exciting the suspicions of a careful man, he will be liable upon it to any bona fide holder without notice when the opportunity which he has afforded has been embraced, and the instrument filled up with a larger amount or different terms than those which it bore at the time he signed

it. The true principle applicable to such cases is that the party who puts his paper in circulation invites the public to receive it of anyone having it in possession with apparent title, and he is estopped to urge an actual defect in that which, through his act, ostensibly has none. 'It is the duty of the maker of the note to guard not only himself, but the public, against frauds and alterations, by refusing to sign negotiable paper made on such a form as to admit of fraudulent practices upon them with ease and without ready detection.' The inspection of the paper itself furnishes the only criterion by which a stranger to whom it is offered can test its character, and, when the inspection reveals nothing to arouse the suspicions of a prudent man, he will not be permitted to suffer when there has been an actual alteration.''

We find the above statement of the ''general principle'' quoted and approved by the Supreme Court of Alabama in *Moore* v. *First National Bank*, 211 Ala. 367, 100 So. 349, at page 351, 34 A. L. R. 526, at page 530. We quote from the opinion in that case:

''In *Winter* v. *Pool*, 104 Ala. 580, 16 So. 543, this court gave application to the foregoing principle, holding the maker of a note liable to a bona fide holder without notice because of his negligence in the careless execution of the instrument, in leaving a blank space following certain printed words, of sufficient length to permit the insertion of a designated place of payment, without having such space marked or otherwise drawn across with a pen.

''In *Holmes* v. *Bank of Ft. Gaines*, 120 Ala. 493, 24 So. 959, this court cited with approval *Winter* v. *Pool, supra,* and again applied the principle of negligence recognized in the latter authority. As said in *Young* v. *Lehman, Durr & Co.*, 63 Ala. 519: 'The law simply utters the sug-

gestion of common justice, and common sense, in declaring "that when one of two innocent persons must suffer from the tortious act of a third, he who gave the aggressor the means of doing the wrong must bear the consequences of the act." ' "

In Volume 9 C. J. S., Banks and Banking, Sec. 356, p. 733, under "Raised or Altered Check," the black lettered headnote reads, "Generally a bank must bear the loss for paying a materially altered check *unless the payment was due to the drawer's negligence or fault.*" (Italics ours.) It will be observed that this summarized statement of this general rule carries distinct recognition of the principle contended for by the Bank in the instant case. The note mentions Texas and Kentucky as standing alone in opposition to this rule, citing the two cases from those States we hereinafter discuss.

Another of the latest text books is American Jurisprudence, in which in Volume 7, under the sub-head, "Effect of Negligence or Fault of Depositor," the rule is stated to be that, "Although, as between a drawee bank and its depositor, the former pays an altered check at its peril and cannot as an ordinary thing charge the payment against the depositor's account, yet the rule is different and the depositor may be made to suffer the loss if some negligent act or conduct of his has contributed to induce such payment, the bank itself being free from negligence," etc., citing for this statement several cases and none to the contrary. Later on, in the same paragraph, the text reads: "and although the drawer of a check is not bound to prepare it so that nobody can successfully tamper with it, according to one line of authority, the fact that one draws a check in such a manner as to facilitate its alteration may constitute negligence which will

preclude him from recovering from the drawee bank for a payment made by it on the check after it has been altered. A like result is reached where the depositor draws the check so that it is easily alterable by his clerk or agent." The text proceeds to state an exception applicable, "where the bank fails to exercise due care in paying a check which has been altered;" and the limitation of this rule to cases where "the bank was misled by that negligence;" and further that "the negligence must be in the transaction itself, that is, in the manner in which the check is drawn."

For the rule thus stated the leading case cited is *Gutfreund* v. *East River Nat. Bank,* 251 N. Y. 58, 167 N. E. 171, 64 A. L. R. 1103, as holding that, "one drawing a check is bound to take usual and reasonable precautions to prevent forgery, and he may be liable where he draws it in such an incomplete state as to facilitate or invite fraudulent alterations." The note also cites *Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529; *Crawford* v. *West Side Bank,* 100 N. Y. 50, 2 N. E. 881, 882, 53 Am. Rep. 152, quoting from the opinion in the latter case that, "the question of negligence cannot arise unless the depositor has, in drawing his check, left blanks unfilled, or by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hands the check may come."

█ The first of these New York opinions is by Mr. Justice POUND, with Mr. Justice CARDOZO and others concurring, and it distinctly and clearly recognizes the rule of liability of the depositor for inducing negligence, citing numerous cases, English and American. (It will be observed that these high authorities take no note of the criminal act rule adopted by our Court of Appeals.) The

Gutfreund case appears to be the latest well considered American case on the subject, and is directly in point, despite that on the facts of that case the Court applied the limitation mentioned in the text in Am. Jur., *supra,* that the bank will be liable if it is itself negligent. In that opinion Mr. Justice POUND so well states the principles which we deem controlling here, with special reference to bank checks, and also discusses the early leading English case of *Young* v. *Grote,* 4 Bing., 253, 130 Eng. Reprint 764, that we quote therefrom at some length [251 N. Y. 58, 167 N. E. 172, 57 L. R. A. 529] :

"The first question is whether plaintiffs were at fault in signing the checks. As the bank and the depositor are under a contractual relation in this matter (*Gallo* v. *Brooklyn Sav. Bank,* 199 N. Y. 222, 92 N. E. 633, 32 L. R. A. (N. S.), 66), the depositor in drawing checks is bound to take usual and reasonable precautions to prevent forgery, although he is not required so to prepare the check that no one can successfully tamper with it. 'The drawer of a check may be liable where he draws the instrument in such an incomplete state as to facilitate or invite fraudulent alterations.' *Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219, 224, 63 N. E. 969, 971 (57 L. R. A. 529).

"The question as to what is negligence facilitating alterations has given rise to much discussion. In the leading case of *Young* v. *Grote* (1827), 4 Bing. 253 [130 Eng. Reprint 764], a depositor in a bank signed a blank check and left it with his wife to be filled up as required. The wife directed a clerk to fill it up for £52.2s. He did so and showed it to her. She then instructed him to get it cashed. He increased the amount of the check by £400, inserting the necessary figure and words in spaces which he had left for that purpose, and drew the larger sum from the

bank. It was held that the customer, and not the bank, should suffer the loss. Reasonable care must be used to prevent forgery, and lack of reasonable care was shown. Although the application of the rule of care to the facts in *Young* v. *Grote* has been limited as casting too great a burden on the depositor, by requiring him to close up all spaces which might be utilized by a forger for the purpose of alterations (*Colonial Bank* v. *Marshall* [1906], A. C. 559, 568 [5 B. R. C. 283, 5 Ann. Cas. 771—P. C.]), and the case has been characterized by Esher, M. R., in *Scholfield* v. *Londesborough* [1895], 1 Q. B., 536, 543, as 'the fount of bad argument,' it still states the principle to be applied to blanks left unfilled in checks either as to names, figures or words (*London Joint Stock Bank* v. *Macmillan* [1918], A. C., 777, 821 [9 B. R. C., 720—H. L.]). The rule as to other negotiable paper and other relations may be less strict. *National Exch. Bank* v. *Lester,* 194 N. Y. 461, 473, 87 N. E. 779, 21 L. R. A. (N. S.) 402, 16 Ann. Cas. 770; *Scholfield* v. *Londesborough, supra.*

"The grounds for the decision in *Young* v. *Grote* have been variously stated, but they resolve themselves into the principle that, if the negligence of the depositor is the cause of the payment by the bank of a forged check, he may not set up the invalidity of the paper which he has induced the bank to act on as genuine. This principle rests primarily on the doctrine of estoppel. If the negligence of the depositor enables the clerk to alter the check, and so causes the bank to make payment on a forged order, the depositor is estopped from disputing the authority of the banker to pay. 'Preclusion from assertion of rights is estoppel.' Ewart on Estoppel, 45."

In connection with the mention by Mr. Justice POUND of the characterization of *Young* v. *Grote* by Esher, M. R.,

in *Scholfield* v. *Londesborough* (1895) as "the fount of bad argument," and some other criticisms of this case, mentioned by the Annotator in L. R. A. 1918B, 327, it is interesting to observe that in a later annotation, appearing in L. R. A. 1918F, 958, it is said that: "Since the date of the preparation of that note [in 1918B, *supra*] the decision of the English court of King's bench in *Macmillan* v. *London Joint Stock Bank* [1917], 2 K. B., 439, W. N., 181, 33 Times L. R. 398, 61 Sol. Jo. 523, 86 L. J. K. B. (N. S.) 1499, 22 Com. Cas. 364, discussed therein, was reversed by the House of Lords (1918), 145 L. T. Jo. 163. Under the facts of that case as set forth in the note in L. R. A., 1918B, 327, the House of Lords holds that the bank is protected in paying out the amount to which the check had been raised. The early case of *Young* v. *Grote,* 4 Bing. 253, 130 Eng. Reprint 764, 12 J. B. Moore, 484, 5 L. J. C. P. 165, 29 Revised Rep. 552, 5 Eng. Rul. Cas. 140, is approved." This appears to be then the latest and final holding in England.

American Jurisprudence, *supra*, cites a number of other cases supporting the text and refers to Annotations in 64 A. L. R. 1108; 2 L. R. A. 96; L. R. A. 1918B, 329; 5 B. R. C. 295; 9 B. R. C. 785. The note also cites *Leather Mfrs. Nat. Bank* v. *Morgan*, 117 U. S. 96, 6 S. Ct. 657, 29 L. Ed. 811, for the proposition that: "Careless execution of checks at the time they were signed by a depositor so as to invite or give opportunity for alterations affects his right to recover in case of their unauthorized alteration." In the latter case Mr. Justice HARLAN discusses at length the doctrine of estoppel as applicable between the depositor and his banker and seems to recognize that it may be applied where the facts justify it where the loss involved is the result of forgery. How-

ever, this was not a case on its facts like the case at bar, although it approves an applicable principle. And in a late case (1932) STONE, J., (*Aetna Cas. & Surety Co. v. Phoenix Nat. Bank & Trust Co.*, 285 U. S. 209, 210, 52 S. Ct. 329, 76 L. Ed. 709, at page 713) seems to recognize the right of a bank to hold a depositor for loss occasioned by negligently leaving blanks on a check.

Toward the close of the same paragraph in 7 Am. Jur., on page 424, the text notes that there are other authorities who hold that, "the mere fact that a check intended as a completed instrument has been executed by a depositor with blank spaces or in such a manner as to render it easily alterable is not a violation of any obligation owing from the depositor to the bank; such an act does not, of itself, according to this view, enable the drawee bank which has paid the altered check to shift the resulting loss to the depositor by charging the payment to his account." For this quite evidently minority view, the text cites the three cases from Oklahoma, Kentucky and Texas, cited by the Court of Appeals, hereinafter discussed. (However, if this view be conceded, much more appears in the instant case than "the mere fact" that blank spaces were left.)

In Volume 1 of Paton's Digest of banking laws, Sec. 312, p. 50, it is said: "The drawer is not chargeable with the amount added to a check, *unless he has left blanks in the check which the holder was able to fill out without suspicion.*" (Italics ours.) And, again, in Volume 2, Sec. 1124(a), p. 1360, particularly pertinent here:

"Instances where, as between customer and bank, the customer has been held responsible, are the cases of a check filled out with the amount beginning in the middle of the line and signed by the customer in that condition,

so that the holder was able to prefix an increased amount without the check giving any evidence of alteration . . ."

In concluding our reference to text books, we quote this statement from R. C. L., Volume 1, Section 69, at page 1034:

"According to numerous well-considered decisions the maker of a written instrument may, by the manner of its execution, so facilitate its alteration that he will be precluded from setting up the defense of its alteration, as against a bona fide holder of the instrument without notice. These authorities lay it down as a general principle of the law merchant, that when the drawer of a bill or the maker of a note has himself, by careless execution of the instrument, left room for any alteration to be made, either by insertion or erasure, without defacing it or exciting the suspicion of a careful man, and the opportunity which he has afforded has been embraced, and the instrument filled up with a larger amount or different terms than those which it bore at the time he signed it, he will be liable upon it as altered to any bona fide holder without notice. In the hands of such a holder a negotiable instrument may be enforced if a sum in excess of that authorized by the maker is inserted in a blank left for the amount of the instrument. So in this line of cases, where a bank cashes a check so carelessly drawn as easily to admit of the insertion of additional words and figures, it is held that the maker rather than the banker should suffer the loss."

At this point we again note the statement of the Court of Appeals, made in connection with its remark that, "There are two lines of decisions on the question," to which we agree, that there is "no Tennessee case on this

exact question." The Court of Appeals, as before mentioned, treats the opinion in *State* v. *Broadway National National Bank, supra,* as approving in principle its holding, but we have undertaken to distinguish this case, finding that it has no application.

Quite apparently the opinion of this Court in *People's Bank* v. *Franklin Bank,* 88 Tenn. 299, 302, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884, was not brought to the attention of the Court of Appeals. That was a case in which a Bank had negligently cashed a forged check purporting to be drawn upon another Bank and had, upon its endorsement of that check, received payment of the drawee Bank and was held liable to the drawee Bank for the amount received. It was thus a case not on all fours with the case now before us, but the significance of that opinion as bearing upon the present controversy is the recognition running clearly throughout that opinion of the general rule that the Bank at its peril pays a forged check *"except in cases where the negligence of the depositor has induced or brought about the payment by the bank."* (Italics ours.)

Again, distinctly recognizing the rule invoked by the Bank in the instant case, the Court says (88 Tenn. at page 305, 12 S. W. at page 717, 6 L. R. A. 724, 17 Am. St. Rep. 884) :

"Mr. Daniel, in his work on Negotiable Instruments, after discussing and criticising the cases that are supposed to hold a bank liable at all hazard, and to the last extremity, where it pays the check with the signature of its depositor forged, lays down the rule substantially as we have stated it. 2 Daniel, Neg. Inst. Secs. 1655 [1655a, 1656, and] 1657, with cases cited in the notes.

"And the rule is stated by the learned contributor to

the article on forged checks in 3 Amer. & Eng. Cyclop. Law [page] 223, as follows: 'Where, however, the loss has been traced to the fault or negligence of the drawer or holder, it will be fixed upon him.' See cases cited in note 1.''

It is also significant that this opinion recognizes a distinction we have heretofore noted between other commercial paper and checks, saying, 88 Tenn. on page 306, 12 S. W. at page 717, 6 L. R. A. 724, 17 Am. St. Rep. 884: ''Now, while we concede there is quite a difference between this rule, as applicable to indorsers on commercial paper, and as applied to checks, so far as the liability of the drawer is concerned, yet we see no reason why the bank should not have the benefit of such rule where the indorsement is made under circumstances which establish or impute negligence to the indorser.'' It is not possible to read this well considered opinion, dealing with a somewhat different situation, but involving a like principle, without perceiving that it definitely placed this Court behind the rule which we conceive to be sustained by the great weight of authority, as well as by reason, that while there is no obligation on the drawer of a check so to prepare it that no one can successfully tamper with it, one who so draws a check as to facilitate its ready and easy alteration is guilty of negligence, which may estop him from recovering from the drawee Bank the sum paid on the altered check, this being particularly true ''where the depositor draws the check so it is easily alterable by his clerk or agent.'' (7 Am. Jur., p. 424, citing authorities, and Annotation in 41 L. R. A. (N. S.), 529, this being pertinent here, in view of the facts of this case bringing into play the principle of agency.)

The text books, and some opinions, in discussing this

question, in recognizing the existence of a division among the authorities, sometimes overlook two distinguishing principles heretofore mentioned, which are discussed and recognized in certain of the leading cases cited for the rule of liability on the part of the drawee, (1) the difference between the obligation of the drawer of a check to his banker depository and that of the makers of negotiable instruments of other classes, and (2) that the Courts, in refusing to hold the maker of a note responsible, even though negligent, in the preparation or issuance of the paper, have in many instances grounded this holding upon the view that the instrument is a contract and that when altered without the consent of the maker it ceases to be his contract. In applying the criminal act rule, it is said that one cannot be held liable upon a contract which has been altered by the instrumentality of a criminal act. However, we have found no case, as heretofore stated, that has applied this rule to a check.

We come now to consider the cases relied on by the Court of Appeals, other than *State* v. *Broadway National Bank, supra,* heretofore discussed. These are: *Commercial Bank* v. *Arden & Fraley,* 177 Ky. 520, 197 S. W. 951, L. R. A. 1918B, 320; *Glasscock* v. *First Nat. Bank,* 114 Tex. 207, 266 S. W., 393, 36 A. L. R. 320; and *First National Bank* v. *Ketchum,* 68 Okl. 104, 172 P. 81, L. R. A. 1918F, 958. Also, the opinion cites and quotes from *Exchange National Bank* v. *Bank of Little Rock,* 6 Cir., 58 F. 140, 22 L. R. A. 686, and *Knoxville National Bank* v. *Clark,* 51 Iowa 264, 1 N. W. 491, 33 Am. Rep. 129, 135.

We do not understand the decisions in either the Texas, Kentucky or Oklahoma cases to be rested on the criminal instrumentality rule adopted by the Court of Appeals.

The opinion in *Commercial Bank* v. *Arden & Fraley*

dealt with a series of checks. While it refers to the Criminal Instrumentality Rule as having been made the basis of the holding of certain other Courts, it rests its conclusion that the Bank and not the drawer was responsible for the amount to which the checks had been raised on the provision of the uniform negotiable instruments law (Section 124) to the effect that, "Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers," [177 Ky. 520, 197 S. W. 954, L. R. A. 1918B, 320], holding that the rule theretofore approved by the Kentucky Courts had been changed by this statute. We have not found this provision of the negotiable instrument act applied in other cases in which the contest has been between the drawer of a check and his banker, where the negligence of the drawer was the inducing, proximate cause of the loss. In *Laseter* v. *Hill*, 1928, 218 Ala. 240, 118 So. 252, the Court rejected the suggestion that the rule had been changed by this provision of the negotiable instruments act, and approved the former holdings of that Court to the effect that a maker is liable for a loss resulting from such a careless execution of the instrument. We are not inclined to the view that this provision of the negotiable instrument law may be invoked as against reliance upon estoppel, ratification, or laches in cases of this class, whether it be notes or checks that are involved. It is of interest to note that in Uniform Laws Annotated, Volume 5, treating of negotiable instruments, on page 776, Note 55, subhead "Negligence of maker" it is said that: "A maker may by his own laches make it possible for another so to alter the note as wholly to change the

terms and meaning and yet compel him to pay it to an innocent holder," citing *Diamond Distilleries Co. v. Gott*, 137 Ky. 585, 126 S. W. 131, 31 L. R. A. (N. S.), 643; *Aetna Casualty, etc., Co. v. Phoenix National Bank, etc., Co.*, 285 U. S. 209, 52 S. Ct. 329, 76 L. Ed. 709, reversing 6 Cir., 44 F. (2d) 511, construing the Kentucky Negotiable Instruments Act. This Annotator further says: "The drawer of a check may by executing in such a way as easily to permit of its alteration in amount without giving the instrument a suspicious appearance be precluded by his own negligence from a recovery from the bank which has cashed it for the increased amount," citing *Timbel v. Garfield Nat. Bank*, 121 App. Div. 870, 106 N. Y. S. 497; also, *Trust Co. v. Conklin*, 65 Misc. 1, 119 N. Y. S. 367, which was an action by a bank to recover an overdraft from a depositor, that opinion emphasizing the distinction between the liability of the maker of a note and of the drawer of a check on his bank, to whom he owes a special obligation to use care. This holding of the Kentucky Court is conceded in the opinion to be a reversal of former holdings of that Court, appearing, as before suggested, to be put upon the Negotiable Instruments Act, on the theory that this Act has changed the law. This case does not appear to support in any way the opinion of our Court of Appeals in so far as application of the criminal act rule is concerned.

And so the Texas Court, in the Glasscock case, *supra* [114 Tex. 207, 266 S. W. 396, 36 A. L. R. 320], departing from the rule which had been recognized in that State, appears to base its holding on the above quoted section of the Negotiable Instruments Act dealing with liability in case of alterations. It may be conceded that, on its facts, that case was correctly related to this Act and

rightly decided. The opinion recites that "the payee of the check entirely erased the figures '$5.00' and substituted therefor the figures '$500.00,' " etc. Now, obviously, here was a character of alteration generally recognized as wholly different in principle from that which we are considering. No authorities hold the drawer of a check liable for an alteration made by *erasure* and substitution of words or figures. That case is, therefore, not in point, either on its material facts or its law. Moreover, it may be remarked here that the Glasscock case is referred to by the Annotator in 36 A. L. R. 327, where it appears, as placing Texas in a class by itself. While, as stated, the decision is rested on the Negotiable Instruments Law, it quotes approvingly from the opinion of Judge SANBORN in *Exchange Nat. Bank* v. *Bank*, 6 Cir., 58 F. 140, 22 L. R. A. 686, wherein the Criminal Instrumentality Rule is relied on. Further comment will be made on this opinion.

Third in order of the cases cited by the Court of Appeals is *First National Bank* v. *Ketchum, supra,* in which the Oklahoma Court held the Bank responsible for the loss on a raised check—and we think properly so on the facts of that case. In the first place, the check in that case was altered by erasures and changing of words and figures, and not merely by adding words and figures in spaces negligently left available for this purpose, which brings that case within an entirely different rule, to which the Negotiable Instruments Act, above referred to, might well be held to have application, as we have said of the Texas case. But, in the second place, the opinion of the Court sets out in detail the manner of the changes made on the face of the check and emphasizes the bungling and obvious way in which these alterations

had been made, and holds that the Bank was clearly guilty of negligence in failing to observe or detect the alterations and repudiate the check. In concluding its discussion of this question, really determinative in that case, the Court said [68 Okl. 104, 172 P. 81, L. R. A. 1918F, 958]:

"The alteration is palpable, and the most ordinary examination of the check upon the part of the bank would have revealed it. It was discredited on its face by its very appearance at the time the bank took it, and, instead of the plaintiff being negligent, the evidence convinces us that the bank was extremely careless in paying this check in the condition it was when it was presented, and is not in a position to say that its loss was occasioned by any negligence of plaintiff." What a far call from the facts of the instant case, where the negligence of the maker was gross and the Bank was guilty of none.

Moreover, the opinion in that case quite definitely recognizes, certainly does not disapprove, the rule that, "where an instrument was executed leaving certain blanks therein which were afterwards filled out in such a manner as to leave no mark or indication of an alteration therein," the loss falls on the maker, rather than on the bank. Indeed, the Court says, in recognition of this rule that, "Where the maker of an instrument carelessly leaves blank spaces therein which he intrusts to another to fill, and that other person disobeys instructions and fills up the space for a larger amount, the rule may well be invoked, for the loss occasioned thereby is the natural and probable result of his negligence and should have been foreseen by him." This excerpt from this opinion states the case presented on this record, and gives support to the petitioner Bank, rather than to

Foutch, the drawer of this check. Furthermore, we find no support in that opinion for the application here of the criminal instrumentality rule, adopted by the Court of Appeals.

But, the Court apparently relies chiefly upon the opinion in *Exchange Nat. Bank* v. *Bank of Little Rock*, 6 Cir., 58 F. 140, 22 L. R. A. 686, and *Knoxville Nat. Bank* v. *Clark*, 51 Iowa 264, 1 N. W., 491, 33 Am. Rep. 129, 135, in which a promissory note was raised. The opinion quotes at length from the Federal case, in which the opinion was by Judge SANBORN. Upon an examination of that case, however, it will be found that a distinction heretofore mentioned is strongly emphasized. That was not a case of a check, on a bank by a depositor, but a negotiable draft. A pertinent portion of Judge SANBORN's opinion, not included in the quotation used by our Court of Appeals, reads [58 F. 143, 22 L. R. A. 686]: "The altered contract is not his [the maker's] contract. His representation was not that the forged contract was his, but that the original contract was his, and the rule *caveat emptor* makes it the duty of the purchaser when he buys it, and not of the maker, to then see that it is genuine." This could not be said of a check. He cites and follows *Holmes* v. *Trumper*, 22 Mich. 427, 7 Am. Rep. 661, opinion by Mr. Justice CHRISTIANCY, the holding being that one could not be held by forgery to create a contract; also, *Greenfield Sav. Bank* v. *Stowell*, 123 Mass. 196, 25 Am. Rep. 67, *Burrows* v. *Klunk*, 70 Md. 451, 17 A. 378, 3 L. R. A. 576, 14 Am. St. Rep. 371; and *Knoxville Nat. Bank* v. *Clark*, 51 Iowa 264, 1 N. W. 491, 33 Am. Rep. 129. Also, pertinent here, Judge SANBORN indicates that the maker of a note would be liable if he entrusts an agent to fill out the instrument, which makes the loss possible.

372

■ Just here we refer again to a phase of the instant case, which is not dealt with in the opinion of our Court of Appeals. The proof is, as heretofore shown, that the drawer of this check authorized the payee to fill out the check, not only in pencil, which made the added words and figures raising the check particularly easy to insert and well nigh impossible to detect, there being no such variation as frequently appears when different ink is used, but the payee having been authorized to fill out the check in his handwriting, with the words and figures placed as hereinbefore shown, no possibility of detection of the check having been thus raised was left open to the Bank. It is difficult to conceive how a drawer could have been guilty of more directly inducing negligence, affirmatively opening the way for the addition of the raising words and figures. There seems thus to come into play application of the principle suggested by Judge SANBORN, as above mentioned, of agency. We find an apt reference to this principle in the opinion in *Broad Street Bank* v. *National Bank,* 183 N. C., 463, 112 S. E. 11, 16, 22 A. L. R. 1124, wherein a drawer Bank was held not liable to a drawee Bank for not having used sensitized paper. The Court said: "In some of the authorities . . . there were blank spaces capable of being filled with such ease that the cases might be reconciled and recovery sustained by reason of authority implied from the defective condition of the instrument." Certainly, to a material degree, the payee of this check was made the agent of the drawer for the purpose of filling out the check. We have been able to discover no case presenting a situation so pregnant with evidence of gross negligence, coupled with the element of agency.

Referring further to cases mentioned above, as cited

by Judge Sanborn, we find that *Burrows* v. *Klunk*, 70 Md. 451, 17 A. 378, 3 L. R. A. 576, 14 Am. St. Rep. 371 (also cited in 21 C. J., page 1170, for the Criminal Act Rule there mentioned), was a case of an *endorser* on a *note* and the Court emphasizes that *Young* v. *Grote*, 4 Bing. 253, the leading English case holding the negligent drawer of a check liable, was "a case between banker and customer;" and in *Greenfield Savings Bank* v. *Stowell*, 123 Mass. 196, 25 Am. Rep. 67, *supra*, the opinion emphasizes the distinction between the obligation of the maker of a note, and that of a drawer of a check on his depository bank, and says: "The maker of a promissory note holds no such relation to the indorsees thereof as a customer does to his banker. The relation between banker and customer is created by their own contract, by which the banker is bound to honor the customer's drafts," etc.

Referring again to *Holmes* v. *Trumper, supra* (which also is cited in 21 C. J. 1170, for the criminal act rule), this was another alteration of a printed form note by adding "10 per cent," thus changing the interest rate, in a blank space. This, again, was not a case of a check on a bank, and the Court notes the rule that the maker is held, "where the third person, whose act or default has occasioned the loss, has been in some sense or to some extent, the agent of the party who is made to sustain the loss," etc. Also, in referring to the criminal act theory the opinion challenges, "how such a crime . . . could create a contract on the part of the maker, we confess ourselves unable to comprehend." That case discusses and distinguishes the early English case of *Young* v. *Grote*, 4 Bing. 253, 130 Eng. Reprint 764, before referred to, in two main respects. It is said, first, that "It was a check by a customer upon his bankers who, as depositaries

of their customer's money, were bound, from time to time, to pay such sums as the latter might order. They were under obligation to pay his checks," etc. "Now, it is quite clear that no person is under any obligation to purchase a promissory note, nor, consequently, to decide whether the paper is genuine or not." And, in the second place, the opinion proceeds: "Another very important circumstance in that case [*Young* v. *Grote*] was that the check was filled up by the plaintiff's clerk." Here, again, is a reference to the point hereinbefore suggested, that the relation of agency appears in more or less degree.

These cases we have mentioned, *Holmes* v. *Trumper*, *Greenfield Savings Bank* v. *Stowell*, *Burrows* v. *Klunk*, *Knoxville Nat. Bank* v. *Clark*, and *Exchange National Bank* v. *Bank of Little Rock*, are the leading American cases holding to the rule of non responsibility of the maker of an instrument for a loss occasioned by its alteration. All of them deal with facts essentially unlike those here presented. Not one of them is a case of a check drawn by a depositor on his banker, and in each of these opinions, with perhaps one exception, this distinction is noted, the distinction being rested not only on the difference in the relationship of the parties, out of which arises a special obligation of reasonable care, but, with special reference to the application of the Criminal Instrumentality Rule, that, as suggested in the opinion in our case of *State* v. *Broadway National Bank*, in the making and issuance, or endorsement of notes and bills and like instruments the negligence is remote, not the proximate cause of the loss and not "in the transaction itself," as is true in the case of a check drawn on a bank.

In conclusion of this too lengthy discussion, elaborated because of the importance of the question and in deference to the contrary views of the learned Court of Appeals, we add that, in a diligent search of the reported cases, both English and American, we have found no case on its facts like that now before us in which the bank has been adjudged liable for the loss. Here we have (1) a check by a depositor on his banker, as distinguished from a promissory note or negotiable bill of exchange; (2) with spaces, or blanks, left in such positions, and to such extent, as not only to facilitate, but invite the filling in of additional figures and words requisite to present the appearance of a completed instrument; (3) written with pencil with the words and figures altogether in the handwriting of the payee to whom it was delivered, thus not only preparing the way for the filling of the blanks in the same handwriting, rendering the additions impossible of detection, but conveying an implication of authority in the draughtsman to make additions thereto; and (4) an element of agency in the matter of the preparation of the instrument, universally recognized as fixing responsibility upon the depositor.

We are constrained to reverse the decree of the Court of Appeals and affirm the judgment of the Circuit Court.