J. P. LEONARD

*v.*

THE NATIONAL BANK OF WEST VIRGINIA AT WHEELING, *etc.*

(No. 12427)

Submitted September 28, 1965. Decided November 16, 1965.

268

*Schmidt, Laas, Schrader & Miller, Thomas B. Miller,* for appellant.

*Gompers & Buch, Joseph A. Gompers, Harry L. Buch,* for appellee.

BERRY, JUDGE:

This action was instituted in the Circuit Court of Ohio County by J. P. Leonard against the National Bank of West Virginia at Wheeling, a National Banking Association, to recover money paid by the Bank from Leonard's account on an alleged forged check in the amount of $3600. The plaintiff's complaint is based entirely on the forgery of the check in question and the defense set up in the answer filed by the defendant is that the plaintiff is barred from recovery by reason of his own negligence in the drawing of the check

and that the check bore the true signature of the plaintiff and was not a forgery. The case was submitted to the jury on the question of forgery and of negligence on the part of both the plaintiff and defendant and whether or not the check in question was a raised check. The jury found that the check was a raised check, not a forgery, and returned a verdict in favor of the plaintiff in the amount of $3000 apparently giving credit for the $600 it supposed was the original amount of the check and the trial court entered judgment thereon on October 18, 1963. A motion was timely made by the defendant under provisions of Rule 50 (b) of R. C. P. to have the verdict and judgment set aside and for a judgment in favor of the plaintiff in accordance with its motion for a directed verdict properly made at the end of all the evidence and overruled by the trial court. The defendant's motion to set aside the verdict and judgment and enter judgment for it was overruled on July 20, 1964. Upon application by the defendant this Court granted an appeal from said judgment on February 1, 1965.

The facts in connection with the trial of this case are quite confusing. The plaintiff apparently because of ill health did not appear and testify in person at the trial. However, a lengthy deposition taken from him some time before the trial was introduced into evidence at the trial and a written statement which was taken from him soon after this matter was called to the attention of the defendant Bank was also introduced into evidence at the trial. When the plaintiff's deposition was taken he denied many of the statements which were contained in the written statement and gave as a reason that he was not feeling well at the time the statement was taken and that the person taking the statement did not take down the entire conversation, and during the taking of his deposition in reply to his counsel's urging to answer the questions, he said, "This is all new to me, it seems like a lot of nonsense."

The plaintiff is a resident of New York City and is engaged in the business of fuel oil dealer and heating contractor and maintained bank accounts in that City. As

a hobby, he owned a string of race horses which he raced both at Wheeling Downs in Wheeling and at Waterford Park in Chester, West Virginia.

He opened a checking account with the defendant Bank on June 1, 1959, and maintained a balance of between $10,000 and $30,000 at various times and had drawn checks on this account for amounts as high as $6500 which had never been questioned. After the plaintiff received his monthly statement the first part of September, 1961, for the month of August, he found a check which had been cashed by the Bank and charged against his account for $3600. This check was dated August 3, 1961, and payable to "Martin Mattson" and had a signature of J. P. Leonard as maker and on the back of the check as last endorsement in blank was also the signature of J. P. Leonard. Above the endorsement of J. P. Leonard was the endorsement of "Martin Mattson". The check in question was introduced into evidence and considered by the jury.

The plaintiff immediately contacted the Bank and denied he had written such a check and asked for an investigation which was promptly made. When the Bank did not credit his account for the $3600 paid on the check in question this action was instituted against it to recover said amount claiming the check was a forgery.

The statement made by the plaintiff on September 14, 1961, heretofore referred to and introduced into evidence, contained a recital that he did not make out a check for $3600 and did not know any Martin Mattson, that he did not write the word "thrity" which was misspelled, but stated that he did write the words "six hundred" and that the signature of J. P. Leonard as the maker and endorser on the back of the check was his signature, that the date August 3, 1961, was not written by him, and that he did not fill out the name of the payee. He further stated that he endorsed the check in order that the man he gave it to, a man by the name of Santo, could get it cashed at the track. He stated that he gave this check to Mr. Santo for $600 as a final payment for two horses purchased from Santo in the amount of $1200 on August 3rd or 4th, 1961;

that Mr. Santo said he could have lost the check or could have given it to someone.

The plaintiff's deposition differs materially from the statement of September 14, 1961. He repeatedly said that the signatures, both of the maker and the endorser, looked like his, but would not confirm or deny that it was his. In the deposition he said that after making the statement he investigated further and found that he had paid Santo by check for $560.55 on a New York Bank, which was introduced at the trial, that he gave Santo $40 in cash and that Santo gave him back $.55, thus making a payment to Santo for the horses of $600 which he claimed was the final payment on the horses as indicated by a bill of sale dated July 28, 1961, in the amount of $1200 cash showing the "balance nil". This check was dated July 17, 1961 but was turned over to Santo on July 31 or August 6. The plaintiff testified that he did not remember how the first half of the $1200 was paid and that "It would have to be after July 28."

Another check in the amount of $410.65, given to a man named Beecroft, was introduced into evidence by the plaintiff to substantiate his contention that he had not given the altered check, and this check contained a last endorsement in blank signed by J. P. Leonard, the plaintiff. His explanation was that he cashed the check for Beecroft. He further testified that he would never sign a check in blank and that when he made the statement about the Mattson check he knew nothing about the Santo check which was drawn on a New York Bank and that was the reason he was so positive in the statement he made that he had given Santo a $600 check. He denied in his deposition that he had ever made a check for $600 which was unaccounted for in his stubs, but testified that the words "six hundred" looked like his writing and the signature looked like his. He denied that the $3600 opposite the dollar mark was his writing.

The evidence introduced by the Bank was to the effect that someone came into the bank with the check in question, that the teller required some kind of identification,

the details of which he could not remember at the time of the trial, that the plaintiff's account was checked to see if he had sufficient funds and in addition the teller referred the man to the vice president of the Bank who "o.k'd" the check. The vice president, Mr. Charles E. Kalkreuth, testified that he did not make an exhaustive investigation but assumed the teller had already made proper investigation. The plaintiff's signature was checked against a signature card kept by the Bank with a true signature of the plaintiff and they corresponded. The signature card was also introduced into evidence and submitted to the jury.

Several witnesses were introduced by the plaintiff who were employees or who worked in banks at Wheeling who testified as to their custom with regard to their identification procedure, which apparently was not uniform. These witnesses admitted that they did not know the procedure with regard to identification followed in other banks. Some of these witnesses testified that they would have required the payee to endorse the check after Leonard's signature, would have called Leonard to ascertain if he had written the check or would have required a third party to identify the payee. One of the plaintiff's witnesses testified, however, that if he could have identified the payee he would not have called the maker.

A banker who was also a lawyer testified on behalf of the defendant that the check in question was a very unusual check but with the plaintiff's endorsement in blank it made it a bearer instrument and it could be paid upon delivery without endorsement by the payee.

If the plaintiff's signature on the check in question was forged and the money was paid to a third party by the bank, as contended by him in his pleading at the pre-trial conference and during the trial of the case, the bank would have been liable and the plaintiff could recover from the defendant bank as a matter of law unless "precluded", the term used in Negotiable Instruments Law to include a wide variety of defenses like estoppel, ratification, negligence, etc., which are not present in the case at bar. Code, 46-1-23; 3 M. J., Banks and Banking, § 53; 10 Am. Jur. 2d, Banks,

§§ 603, 604; *Yarborough* v. *Banking, Loan & Trust Co.,* 142 N. C. 377, 55 S. E. 296; *Central Nat. Bank of Richmond* v. *First & Merchants Nat. Bank of Richmond,* 171 Va. 289, 198 S. E. 883. However, the jury has answered this question in the negative and found from proper evidence before it during the trial that the signatures of the plaintiff as maker and endorser in blank were not forged signatures, and this case would easily be disposed of in favor of the defendant Bank if the jury had gone no further in its findings. The jury further found in its verdict that the check was also an altered or raised check and this finding makes the case more difficult for disposition.

The general rule with regard to altered or raised checks is that if a bank pays such checks it does so at its peril and can only debit the drawer's account for the amount of the check as originally drawn, but there is an exception in the case of altered or raised checks to the effect that if the altering or raising of the check is because of the carelessness of the maker or depositor the bank cannot be held liable in such case. This exception is based on negligence by some courts and estoppel by others, but regardless of the reasons there can be no recovery by the depositor against the bank where the exception is applicable. 10 Am. Jur. 2d, Banks, §§ 616, 617; Annot. 39 A. L. R. 2d, 641, at page 651; *Reiter* v. *Western State Bank,* 240 Minn. 484, 62 N. W. 2d 344, 42 A. L. R. 2d 1064; *Savings Bank of Richmond* v. *National Bank of Goldsboro,* 3 F. 2d 970, 39 A. L. R. 1374; *National Bank of Virginia* v. *Nolting,* 94 Va. 263, 26 S. E. 826; *Foutch* v. *Alexandria Bank & Trust Co.,* 177 (Tenn.) 348, 149 S. W. 2d 76.

The jury having found that the check in question involved in the case at bar was not a forged check but was a raised or altered check, we must now look at the facts surrounding the drawing, issuance, and alteration of the check in order to ascertain whether or not the plaintiff is barred from recovery because of his carelessness or negligence in making and disposing of the check in the first instance in such fashion that it could be altered easily.

It is clear from the evidence in this case and from the check, which was introduced into evidence as an exhibit, that the name of the payee was left blank, that the amount of the check opposite the dollar sign was left blank and a one and one-half inch space to the left of the words "Six hundred" was left blank, and that the plaintiff's signature on the back of the check as an endorser left a blank space of one inch from the top of the check. As the check was drawn, the blank space for the payee's name could have been made to "cash", any amount could have been placed in the space for the figure opposite the dollar sign and more than enough room was left for words to be filled in before the words "Six hundred" in order to alter or raise this check, and all of such blank spaces were filled up in such manner that they could not easily arouse the suspicions of a careful person. It has been repeatedly held in such cases that the drawer is barred from recovery. *Savings Bank of Richmond* v. *National Bank of Goldsboro*, 3 F. 2d 970, 39 A. L. R. 1374; *Reiter* v. *Western State Bank*, 240 Minn. 484, 62 N. W. 2d 344, 42 A. L. R. 2d 1064. See Annot. 42 A. L. R. 2d 1070.

The check in question was drawn in such manner that it could be readily raised or altered and such changes could not be detected by the use of ordinary care. In fact, the carelessness of the drawing of the check in question would amount to gross negligence and the plaintiff would be estopped from any recovery if his were the only negligence involved because such action on his part would amount to negligence as a matter of law. 10 Am. Jur., Banks, § 617; *Foutch* v. *Alexandria Bank & Trust Co.*, 177 Tenn. 348, 149 S. W. 2d 76.

However, it has been held that the negligence of a depositor in drawing a check which can be altered does not render him liable if the bank fails to exercise due care in paying such check, 10 Am. Jur. 2d, Banks, § 617; *Gutfreund* v. *East River Nat. Bank*, 251 N. Y. 58, 167 N. E. 171, 64 A. L. R. 1103; but if the maker's carelessness is the proximate cause of the payment of such altered check on

the part of the bank, the bank is not liable. *Gutfreund* v. *East River Nat. Bank, supra.*

The negligence which the plaintiff endeavors to charge the bank with in connection with this transaction is almost entirely based on evidence introduced by the plaintiff to the effect that the bank was negligent in not having the person who presented the check to the defendant bank for payment identified as the named payee and endorser on the check, Martin Mattson. There is no evidence in this case that the person who presented the check was not Martin Mattson, the named payee and also the person who endorsed the check above the endorsement of the plaintiff, and if the plaintiff gave the check to Santo as indicated in his statement, which the jury must have believed from its verdict, there is nothing to rebut the prima facie rule of the Negotiable Instruments Law that Mattson had authority from Santo to insert his name as payee in the blank. Code, 46-1-14. If the person who presented this check and to whom it was paid was Martin Mattson there could be no negligence with regard to identification on the part of the bank because the endorsement would not be a forgery and the bank would be entitled to cash the check even if the endorsement of J. P. Leonard in blank was not under his name. It would, therefore, appear that the question as to whether the bank was guilty of negligence in not having Martin Mattson identified would be immaterial in this case when it was not proved that the signature was a forgery and further the evidence indicated that the bank did perform some identification procedure in this instance. The plaintiff also contends that the bank was negligent in not having the person who presented the check endorse it after the endorsement of J. P. Leonard. The signature in question speaks for itself and the more than sufficient space for endorsement of a payee above the name of the plaintiff's signature on the back of the check would constitute negligence on the part of the plaintiff for having left such space above his endorsement, and the bank could not be charged with negligence in such instance. The plaintiff further stated that he endorsed the check on the back in order that it could be cashed at the track which

would clearly show his intention that the check could be cashed without difficulty, and the fact that he did endorse the check in blank and it was the last endorsement on the back thus made the check easily cashed without difficulty on the part of any person who presented it because it made the check a bearer check payable on delivery. Code, 46-1-9, as amended. This in itself is sufficient to charge negligence on the part of the plaintiff or to estop him from recovering.

The only other matter in which the defendant Bank could be charged with negligence in connection with the cashing of the check in question was the word evidently intended as thirty which appeared before the words "Six hundred" in a misspelled form as "Thrity". However, the writing is very similar to the words "Six hundred", which the jury found was in the handwriting of the plaintiff.

In cases where both the depositor and the bank are negligent in connection with raised or altered checks, the negligence or carelessness of both parties is usually submitted for jury determination as to which was the proximate cause of the erroneous payment. *Dalmatinsko Dobrotvorno Drustvo Sveti Frano Imotski* v. *First Union Trust & Sav. Bank,* 268 Ill. App. 314; Annot. 42 A. L. R. 2d at pages 1074 and 1075; 11 C. J. S., Bills and Notes, § 696. The theory is not one of contributory negligence but which of two independent negligences is the proximate cause. However, where it is clear from the evidence which of the two acts of carelessness or negligence, either on the part of the maker of the check or of the bank in which the deposit is maintained, is the proximate cause in connection with the matter, it becomes a matter of law and a verdict should be directed against the party causing the loss. 11 C. J. S., Bills and Notes, § 696; *Hays* v. *Lowndes Savings Bank & Trust Co.,* 118 W. Va. 360, 190 S. E. 543. See *Bank of Williamson* v. *McDowell County Bank,* 66 W. Va. 545, 66 S. E. 761. It has also been held that where one of two innocent persons must suffer, the loss should fall on the one whose negligence facilitates the loss and the one that gave a third party the means of doing the wrong must bear the

consequences of the act. *Foutch* v. *Alexandria Bank & Trust Co.*, 177 Tenn. 348, 149 S. W. 2d 76; Annot. 42 A. L. R. 2d 1070, 1074; *Bank of Williamson* v. *McDowell County Bank*, 66 W. Va. 545, 66 S. E. 761.

The evidence in this case clearly indicates that the drawer is the party responsible for defendant Bank paying the amount of the altered check and that his actions were the proximate cause for the payment thereof, and such acts on his part constitute negligence as a matter of law. Under the circumstances in this case, when the jury found that the check was not a forgery it became clearly evident that the check was so made that it could be easily altered without detection, and the court should have directed a verdict in favor of the defendant Bank.

For the reasons stated herein the defendant's motion for a judgment after the verdict of the jury was returned, based on its motion for a directed verdict at the conclusion of all the evidence, which was overruled by the trial court, should have been sustained under the provisions of Rule 50 R. C. P. The verdict of the jury is therefore set aside, the judgment of the Circuit Court of Ohio County is reversed and this proceeding is remanded to that Court for proper disposition in accordance with the legal principles set out in this opinion.

*Verdict set aside,*
*reversed and remanded.*